

**DICELLO LEVITT GUTZLER**

444 MADISON AVENUE   FOURTH FLOOR   NEW YORK, NEW YORK 10022

February 27, 2020

**Re:  *Jane Does 1-10 v. Nygard, et al.*, No. 20-cv-01288 (ER) (SDNY)**

Dear Judge Ramos,

We represent Plaintiffs Jane Does Nos. 1-10 in the above-referenced matter. Pursuant to Section 2.A. of the Court's Individual Rules of Practice, Plaintiffs respectfully submit this letter in opposition to Defendants' letter, filed on February 20, 2020. (Doc. 9). The Parties have agreed that the pre-motion hearing, currently scheduled for March 6, 2020, should be postponed, because Plaintiffs intend to file an Amended Complaint within the next 30-45 days and the Parties respectfully believe that it would be more effective and efficient for the Court to conduct a pre-motion hearing after the Amended Complaint is filed.

This action arises out of Defendant Peter J. Nygard's ("Nygard") rape and sexual assault of Plaintiffs, Jane Does Nos. 1-10, and other members of the proposed classes, in the United States, the Bahamas, Canada, and elsewhere around the world, in violation of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1591, *et seq*. Nygard used the resources and brand of Defendants Nygard International Partnership, Nygard Inc., and Nygard Holdings Limited (collectively, the "Nygard Companies")—two of which have their global headquarters in New York City—to engage in a decades-long sex trafficking venture, in which he lured, recruited, and coerced children[1] and young women into commercial sex acts. Nygard used a combination of company funds, influence in the fashion industry, power through corruption of officials, and a network of company employees under his direction to recruit and groom his victims. (Doc. 1 at ¶¶ 1-27, 133-207).

Nygard lured and enticed vulnerable children and young women into commercial sex acts through promises of modeling opportunities and under the guise of attending official company modeling events, known as "pamper parties." *Id.* at ¶¶ 133-495. Numerous Nygard Companies' employees and the Nygard Companies' cash were used to ensure that a pool of vulnerable children and young women were in attendance at the weekly "pamper parties" and also lured by promises of modeling contracts with Defendants. *Id.* Many of Nygard's victims, enticed by money and false promises of modeling opportunities, were groomed to act as "recruiters" and some became full-time sex workers. *Id.* at ¶¶ 177-201. These children and women were paid and otherwise rewarded to provide Nygard with new potential victims—a scheme that lasted for decades. *Id.*[2]

---

[1] While many people, when referring to the sexual abuse of minors, choose to characterize those minors as "underage women," we respectfully submit that such a characterization serves no purpose other than to improperly soften the reality that an "underage woman" is a child.

[2] Defendants' conspiracy theories relating to Louis Bacon's charitable organization helping combat human trafficking, including that of Mr. Nygard, is irrelevant. Defendants falsely contend that Plaintiffs' Complaint is orchestrated and funded by Louis M. Bacon. In doing so, they cite to allegations they've made in another lawsuit as though those bare allegations have the weight of fact, which they categorically do not. Defendants' unsupported contentions are nothing but a transparent attempt to deflect from the horrific sexual and related abuse that Nygard inflicted on children and young women for decades. In any event, the Court should disregard Defendants' contentions in deciding any motion to dismiss, because, in

On February 25, 2020, a joint child exploitation task force, including the FBI and the New York Police Department, raided Mr. Nygard's California residence as well as Defendants' corporate headquarters in New York City, in connection with the allegations made in Plaintiffs' Complaint. In light of the FBI raids, Mr. Nygard stepped down as chairman and announced he would divest ownership in the Nygard Companies.[3]

**This Court Has Personal Jurisdiction Over All Defendants.** All Defendants have substantial ties to New York (Doc. 1 at ¶¶ 2-15, 33, 49-59, 70-73, 82-86, 89, 93), Nygard is the corporate icon and founder of the Nygard Companies, two of which have their global headquarters in New York.  Further, Nygard recruited, lured, and enticed some of his victims to engage in commercial sex acts in New York (*Id.* at ¶¶ 19, 21, 74-75, 180, 187, 191-92, 302), and Nygard's sex trafficking venture was aided and abetted, facilitated, and participated in by the Nygard Companies from their global headquarters in New York.  (*Id.* at ¶¶ 15-18, 20-21, 33, 60-62, 67-70, 79, 95, 156, 548). To establish personal jurisdiction, Plaintiffs must have a state-law statutory jurisdictional basis and demonstrate that the exercise of personal jurisdiction comports with due process. *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68, 82 (2d Cir. 2018).  Plaintiffs satisfy both of these elements both because substantial acts in furtherance of Defendants' sex trafficking occurred in New York and Defendants are at home in New York.

The Nygard Companies commingle funds, do not observe corporate formalities, and are controlled exclusively by Nygard. (Doc. 1 at ¶¶ 5, 58, 86). The locus of the Nygard Companies, which participated in and facilitated Nygard's sex trafficking venture by supplying its brand and resources, including funding the "pamper parties" and supplying cash payments to the victims, is in New York. (*Id.* at ¶¶ 67-71). Significantly, the Nygard Companies' own website states that the "corporate headquarters [is] located in the heart of Times Square."[4] The Nygard Companies' website also states that they opened their "flagship US NYGARD Fashion Concept store in the heart of New York's Times Square" "in the same block as the World Headquarters." Nygard also regularly travels to New York and has a permanent residence located above his flagship store. (*Id.* at ¶¶ 21, 51, 71, 93, 191, 548). Indeed, the New York Court of Appeals has held that Defendants have "substantial connections to New York." *See Bacon v. Nygard, et al.*, 160 A.D.3d 565, 566 (N.Y. App. Ct. 2018). Defendants also regularly invoke the jurisdiction of New York courts, including this District. *See, e.g.*, *Nygard v. Bacon*, No. 19-1559 (S.D.N.Y. Feb. 19, 2019). Accordingly, Plaintiffs' Complaint sufficiently alleges personal jurisdiction over all Defendants.[5]  Plaintiffs' Amended Complaint will contain even more allegations relating to sexual abuse occurring in New York by Mr. Nygard, including at his corporate headquarters.

---

deciding such a motion, the Court is only permitted to consider matters contained within the pleadings. *See* Fed. R. Civ. P. 12(d). To the extent Defendants attempt to introduce matters outside the pleadings, the motion to dismiss must be treated as Defendants' lone opportunity at a motion for summary judgment. *Id.*; *see also Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000).  Consequently, Defendants' allegations are not only false, but irrelevant to any dismissal motion that they choose to file in this case. Defendants' repeated smearing of the victims and survivors of Nygard's rape and related abuses—by attempting to minimize those attacks by claiming fabrication—is beyond the pale and must immediately cease.  Plaintiffs' counsel has now received credible information from more than three dozen victims from five different countries—most from Canada and the United States—involving the same brutal assaults that the Plaintiffs allege.

[3] https://www.nytimes.com/2020/02/25/us/peter-nygard-international-fbi-raid.html

[4] Quotations in this paragraph are found on the Nygard website.  *See* https://corporate.nygard.com/about-nygard/ and https://corporate.nygard.com/nygard-retail/ (last accessed Feb. 21, 2020).

[5] At the very least, Plaintiffs are entitled to jurisdictional discovery regarding personal jurisdiction over Defendants. *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003).

**The Complaint's Class Action Allegations Should Stand.**  Plaintiffs' class allegations are well-plead and should not be stricken. "[M]otions to strike are viewed with disfavor and infrequently granted." *Emilio v. Sprint Spectrum L.P.*, 68 F. Supp. 3d 509, 514-15 (S.D.N.Y. 2014). "A motion to strike class allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete discovery to which they would otherwise be entitled on questions relevant to class certification." *Id.* Moreover, the cases upon which Defendants rely are inapposite and actually help Plaintiffs. *See, e.g.*, *Garcia v. ExecuSearch Grp., LLC*, 2019 WL 689084, at *2 (S.D.N.Y. Feb. 19, 2019) (denying motion to strike class allegations based upon concerns of alleged fail-safe classes not present here); *Calvo v. City of New York*, 2017 WL 4231431, at *2-3 (S.D.N.Y. Sept. 21, 2017) (deciding class certification motion, not motion to strike; and addressing class definition that was "like a magical shape-shifter" constantly changing forms); *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 97 (S.D.N.Y. 2010) (rejecting ascertainability challenge and stating "[w]hile class members need not actually be ascertained prior to certification, they must be ascertainable at some stage of the proceeding"); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) (deciding class certification motion, not motion to strike; and recognizing that once it is ascertained that there is a named plaintiff with requisite standing, there is no requirement that members of the class also proffer such evidence). Here, Plaintiffs have class representatives that have clearly suffered injuries for purposes of standing and the members of the class are easily ascertainable through Defendants' ComCor database. (*See* Doc. 1 at ¶¶ 21, 78, 140, 152, 154, 157, 169). Thus, any attempt to strike Plaintiffs' class allegations is premature at best.

**There Are No "Other Defects" With the Complaint.**  Plaintiffs' Complaint contains clear allegations as to why all applicable statutes of limitation are tolled in this case. (Doc. 1 at ¶¶ 496-508). This Court has held that claims under the TVPA may be tolled. *See Hongxia Wang v. Enlander*, No. 17 Civ. 4932 (LGS), 2018 WL 1276854, at *3-4 (S.D.N.Y. March 6, 2018) (tolling statute of limitations under the TVPA). "Given the possibility of equitable tolling, a TVPRA claim is subject to dismissal based on a statute of limitations defense *only* if the complaint makes clear that the alleged wrongful conduct arose more than ten years before the claim was filed, *and* that the plaintiff has not been pursuing her rights diligently, *and* that no extraordinary circumstances stood in her way." *Id.* at *4 (emphasis added). To the extent that any of Plaintiffs' claims were brought beyond the statute of limitations, the Complaint sufficiently alleges that Plaintiffs diligently pursued their rights and that extraordinary circumstances stood in their way. (Doc. 1 at ¶¶ 496-508).

Plaintiffs' allegations regarding Defendants' political corruption in the Bahamas are clearly material. It is well-settled that a motion to strike under Rule 12(f) "will be denied, unless it can be shown that *no* evidence in support of the allegations would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (emphasis added). Ordinarily, striking pleadings at such an early stage is improper because relevancy and admissibility cannot be determined "on the sterile field of the pleadings alone." *Id.* Here, these allegations are directly relevant to Plaintiffs' tolling claims as well as to Defendants' ability to operate and maintain their illegal sex trafficking venture.

To the extent Plaintiffs allege claims for conduct that occurred outside the United States prior to 2008, those claims are also timely based on the same arguments as set forth immediately above. The 2008 extraterritorial amendment to the TVPA applies retroactively. *See Roe v. Howard*, 917 F.3d 229, 239-45 (4th Cir. 2019). Moreover, to the extent Defendants' conduct occurred abroad prior to 2008, Defendants' conduct constitutes an ongoing sex trafficking venture that continued well after 2008.  *See U.S. v. Harris*, 79 F.3d 223, 228-29 (2d Cir. 1996).

We look forward to addressing these issues and others at the pre-motion conference.

                                            Respectfully submitted,

                                            */s/ Greg G. Gutzler*

                                            Greg G. Gutzler

cc:    Elkan Abramowitz via ECF