**MEMO ENDORSED** 

DICELLO LEVITT GUTZLER
444 MADISON AVENUE   FOURTH FLOOR   NEW YORK, NEW YORK 10022

May 18, 2020

**Re:   *Jane Does 1-46 v. Nygard, et al.*, No. 20-cv-01288 (ER) (SDNY)**

Dear Judge Ramos,

We represent Plaintiffs Jane Does Nos. 1-46 in the above-referenced matter. Pursuant to Section 2.A. of the Court's Individual Rules of Practice, Plaintiffs respectfully submit this letter requesting a pre-motion conference in anticipation of filing: (1) a show cause motion for spoliation of evidence; and (2) a motion for leave to file a Second Amended Complaint.

**Spoliation of Evidence.** Defendants have stated publicly that they "predicted" Plaintiffs' lawsuit long before it was filed—when they filed their RICO lawsuit in the SDNY on February 19, 2019.[1] Accordingly, they had a duty to preserve all relevant evidence to this lawsuit since at least that time. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 n. 13 (S.D.N.Y. 2003). But, despite that duty, Defendants destroyed thousands of electronic files as recently as March 18, 2020—the exact date that Richter Advisory Group ("Richter") was appointed as receiver and Defendants were removed from control of their computer systems.[2]

Despite their duty to preserve all evidence as early as February 2019, Plaintiffs received several tips—not coincidentally, on February 25, 2020, the same day the FBI raided Defendants' New York headquarters and California residence—from former employees, who had direct knowledge, that Nygard executives ordered employees to destroy computer files and "clean up" records. Upon receiving this information, Plaintiffs immediately sent Defendants' counsel a preservation letter, identifying that they received information that Defendants' employees were instructed to spoliate evidence contained on computer storage devices, and requested "immediate measures taken to cease the destruction, explain what measures you took to prevent the destruction of documents, and ensure the full preservation of evidence moving forward."[3] On February 26, 2020, Defendants' counsel responded, indicating they were "making appropriate inquiries," but failing to identify the steps they were taking to ensure the preservation of evidence.[4] In response, Plaintiffs again requested that Defendants identify the steps taken to investigate and prevent the continued destruction of evidence. Plaintiffs also sent an Addendum Preservation Letter identifying additional categories of evidence Defendants were obligated to preserve.[5] Again, Defendants' counsel responded ensuring they had taken appropriate steps to preserve evidence, but refusing to identify what steps were taken.[6] Plaintiffs then requested that Defendants' counsel advise as to what date the litigation hold in this case was issued.[7] Plaintiffs later learned why Defendants counsel concealed the truth and evaded Plaintiffs' repeated

---

[1] Rosemary Feitelberg, Ten Women File Complaint Against Peter Nygard Alleging Rape and Sexual Assault, WWD (Feb. 13, 2020), *available at* https://wwd.com/eye/people/ten-unidentified-women-file-complaint-alleging-rape-and-sexual-assault-against-peter-nygard-1203486182/

[2] *See* Richter Advisory Group Inc. Supplementary First Report of the Receiver, at ¶¶ 19-23 (Apr. 27, 2020), *available at* https://www.richter.ca/wp-content/uploads/2020/03/36-receivers-supplementary-first-report-final5452551-1.pdf

[3] *See* Email Correspondence Between Counsel (attached as Ex. 1); *see also* February 25, 2020 Preservation Letter (attached as Ex. 2).

[4] *See* Ex. 1.

[5] *Id.*; *see also* February 26, 2020 Addendum Preservation Letter (attached as Ex. 3).

[6] *See* Ex. 1.

[7] *Id.*

inquiries regarding the litigation hold.  On March 11, 2020, the Winnipeg Free Press published an article stating that Defendants did *not* take appropriate measures, but rather, only issued a litigation hold on February 26, 2020—*over a year after they "predicted" Plaintiffs' lawsuit, thirteen days after the Complaint was filed, one day after a Grand Jury subpoena was issued by the federal government, and one day after Plaintiffs notified Defendants that they were aware of their destruction of evidence*.[8]  It is clear from the timing of the litigation hold alone that Defendants and their counsel did not comply with their good faith obligation to ensure the preservation of evidence, despite their representations to the contrary.  It is also clear that Defendants' counsel took extreme measures to conceal the truth, thus necessitating this Motion.

On April 27, 2020, Richter authored its Supplementary First Report of the Receiver ("Report").  In the Report, despite counsel's assurance that they took "appropriate steps to preserve evidence," Richter's official report to the court concluded that 10,488 files were deleted *after* the litigation hold was issued, the majority of which were concentrated among three users.[9]  Two of the users were IT accounts—the very group of individuals Plaintiffs previously identified as being instructed to destroy evidence.  The third user was Greg Fenske ("Fenske")—identified in Plaintiffs' First Amended Complaint as one of the main co-conspirators who has knowingly enabled and facilitated Nygard's crimes—who deleted a total of 1,059 files on March 18, 2020, the exact date that the receiver was appointed and Defendants lost control over their computer systems; and nearly a month after defense counsel took "appropriate steps to preserve evidence."  Richter explicitly notes the suspicious nature of Fenske's conduct, stating that in the three weeks prior to the appointment of Richter as receiver, he had very little deletion activity.  Richter is continuing to investigate the appropriateness of the data/document deletions in light of the litigation hold and the Grand Jury Subpoena.  Defendants' counsel, to this day, has concealed this from Plaintiffs' counsel.

Any notion that the deletion of this evidence was somehow routine or benign is undermined by the Richter Report itself as well as Defendants' well-documented history of litigation misconduct and disrespect of the judicial system.  In addition to the instances identified in previous letters to the Court (*see* Doc. 37), Defendants' abuse of the judicial process is exemplified as recently as March 26, 2020 when a Canadian judge determined that Defendants have "not been acting in good faith" and have not cooperated with the bankruptcy receiver.[10]  The judge also determined that Defendants have "failed to comply with orders made by this court and undertakings given by their counsel."[11]  This is consistent with Richter's First Report of the Receiver, which identified numerous instances of misconduct and blatant disregard for court orders.[12]  Because of the ongoing and willful nature of the evidence destruction, Plaintiffs request that the spoliation motion be addressed immediately, on an expedited basis, before addressing any issues raised by Defendants. *See Pension Committee of Univ. of Montreal Pension Plan v. Banc of America Securities*, 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010) ("[T]he breach of the duty to preserve, and the resulting spoliation of evidence, may result in the imposition of sanctions by a court because the court has the obligation to ensure that the judicial

---

[8] Ryan Thorpe, Internal memo tells Nygard employees to preserve documents, Winnipeg Free Press (March 11, 2020), *available at* https://www.winnipegfreepress.com/local/internal-memo-tells-nygard-employees-to-preserve-documents-568713862.html

[9] Richter Advisory Group Inc. Supplementary First Report of the Receiver, at ¶ 22 (Apr. 27, 2020), *available at* https://www.richter.ca/wp-content/uploads/2020/03/36-receivers-supplementary-first-report-final5452551-1.pdf

[10] http://www.manitobacourts.mb.ca/site/assets/files/1042/white_oak_commercial_finance_llc_v__nygard_holdings_2020_mbqb_58.pdf

[11] *Id.*

[12] Richter Advisory Group Inc. First Report of the Receiver at 30-41

process is not abused.").

**Second Amended Complaint.** Plaintiffs also request leave to file a Second Amended Complaint in order to clarify and correct discrete issues in the First Amended Complaint that have been discovered since its filing on April 20, 2020, and also to address discrete alleged factual gaps raised by Defendants during the pre-motion conference on May 7, 2020. Despite Defendants arguing that they needed certain factual information, they curiously opposed Plaintiffs' request for consent to file the Second Amended Complaint. The proposed amendments should have little or no effect on the legal grounds upon which Defendants' anticipated motion to dismiss will be based, as articulated in their May 3, 2020 letter (Doc. 38) and during the May 7, 2020 pre-motion conference. During the May 7, 2020 pre-motion conference, Defendants raised various factual issues that they argued were vague, and went so far as to claim that the factual gaps were so critical that they couldn't fully present their arguments in support of their motion to dismiss. For example, Defendants referenced the lack of a precise timeframe during which Jane Doe No. 5 reached the age of eighteen. Plaintiffs propose filing a Second Amended Complaint that will clarify some of the factual gaps that Defendants allege are present, correct some typographical errors, add additional plaintiffs that have come forward since the First Amended Complaint was filed, provide further clarity on the class definition, and add additional allegations regarding the destruction of evidence (set forth above). Defendants refused to consent even though the proposed amendments will address some of the "vague allegations" that they identified during the May 7, 2020 pre-motion conference—during which they indicated that a portion of their motion would be dedicated to seeking "a more definite statement as to some of the vague allegations" because "the vagueness of the information in the complaint would have [an] effect on our motion to dismiss."[13]

Since Defendants have refused to consent, Plaintiffs respectfully seek leave from the Court to file a Second Amended Complaint. Fed. R. Civ. P. 15(a)(2) provides that a party may amend its pleading either with the opposing party's written consent or the court's leave. "The Court should freely give leave when justice so requires." *Id.* In deciding whether to grant leave to file an amended complaint, the Court should evaluate several factors: (1) whether the amendment is proposed in good faith; (2) whether the amendment would cause undue delay; (3) the extent to which the amendment would prejudice the opposing party; (4) whether plaintiff has previously amended his complaint; and (5) futility of amendment. *Clarke v. TRW, Inc.*, 921 F. Supp. 927, 932 (N.D.N.Y. 1996). The decision to grant or deny leave to amend lies within the sound discretion of the trial court. *Id.* Here, Plaintiffs' proposed amendments are made in good faith in order to clarify and correct certain issues—including issues identified by Defendants as affecting their motion to dismiss—that they have become aware of since the filing of the First Amended Complaint. Plaintiffs propose filing their Second Amended Complaint within twenty-one (21) days after being granted leave to do so. Therefore, the amendment would only impose a very short delay on the filing of Defendants' anticipated motion to dismiss. The proposed amendments will only aid Defendants in their alleged need for information to file their motion to dismiss, as articulated in their May 3, 2020 letter (Doc. 38) and at the pre-motion conference, and, therefore, will result in no prejudice to Defendants. Since the proposed amendments do not include significant substantive changes, and Defendants claim the information is necessary, amendment will not be futile; rather, it will aid in efficiency here. Accordingly, all the factors weigh in favor of granting Plaintiffs' Motion for Leave to File a Second Amended Complaint by Interlineation.

We look forward to addressing these issues more fully at a pre-motion conference, scheduled at the Court's earliest convenience.

---

[13] May 7, 2020 Hearing Tr. at 20.

                Respectfully submitted,

                */s/ Greg G. Gutzler*

                Greg G. Gutzler

cc:    All Counsel of Record via ECF

---

Defendants are directed to respond by Thursday, May 21, 2020 at 5:00 PM.

_____
Edgardo Ramos, U.S.D.J
Dated: May 19, 2020
New York, New York

---