MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
JODI MISHER PEIKIN
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com
———
WRITER'S CONTACT INFORMATION

charwood@maglaw.com
(212) 880-9547

SENIOR COUNSEL
PAUL R. GRAND

COUNSEL
DEVIN M. CAIN
JASMINE JUTEAU
CURTIS B. LEITNER
JACOB W. MERMELSTEIN
———
ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT

**MEMO ENDORSED**

May 21, 2020

Re: *Jane Does Nos. 1-46 v. Nygard, et al.*, No. 20-cv-01288 (ER)

Dear Judge Ramos:

We represent defendants Peter J. Nygard and Nygard Holdings Ltd. ("defendants") and write respectfully in response to plaintiffs' May 18, 2020 letter seeking leave to file (i) a baseless "show cause" motion, which is premised on disingenuous allegations of spoliation, and (ii) their third complaint in four months, purportedly so they can "clarify and correct" "discrete issues" and "factual gaps" in the amended complaint, but really so they can add new plaintiffs (whose joinder plaintiffs do not even claim is needed to address any issues with the existing complaint). As shown below, plaintiffs' allegations of spoliation are inconsistent and contradictory, and thus should be rejected. In any event, the issue of alleged spoliation currently is being addressed by a court-appointed receiver, Richter Advisory Group Inc. (the "Receiver"), which has had possession and control of the relevant Nygard documents and systems since March 18, 2020, and will be reporting its findings publicly to the Canadian court overseeing the associated receivership. The proposed "show cause" motion thus is a distraction, designed to further plaintiffs' public relations campaign against Mr. Nygard and divert attention away from plaintiffs' lack of any valid justification for seeking to amend their complaint yet again.

As defendants made clear during the May 7, 2020 pre-motion conference, they do not need plaintiffs to "clarify" or "correct" any of the so-called "discrete issues" or "factual gaps" in the amended complaint in order to file their motion to dismiss. Plaintiffs thus cannot hide behind a purported purpose of "aid[ing] Defendants," Ltr. at 3, as justification for amending again. Moreover, plaintiffs concede that their proposed new pleading will not address "the legal grounds upon which Defendants' anticipated motion to dismiss will be based." *Id.* In any event, plaintiffs have shown through their prior conduct that the defects in their amended complaint are such that they cannot be cured. Defendants' current arguments for dismissal are the same arguments that defendants first raised three months ago in response to the initial complaint: *i.e.*, that the individual plaintiffs' claims fail for lack of personal jurisdiction, lack of subject matter jurisdiction, and/or because they are time-barred, and that the class claims fail because no matter how plaintiffs define their putative classes, this case cannot proceed as a class action. *See* Dkts. 9, 38. Upon being put on notice of these defects, plaintiffs did not even try to correct them in the

Morvillo Abramowitz Grand Iason & Anello P.C.

amended complaint. That is because the defects are incurable: plaintiffs cannot manufacture jurisdiction where there is none, turn back the clock to save their time-barred claims, or pursue class claims that are premised on a series of alleged individualized torts. *See* Dkt. 38. Indeed, plaintiffs have not identified any defect in the existing complaint that their purported "clarif[ications] and correct[ions]" allegedly would cure.

Moreover, if the defects in the amended complaint could be cured—or if the intent of the proposed new complaint was to try to cure prior defects—plaintiffs would have said as much in their instant letter or requested leave to file a further amended complaint during the May 7, 2020 conference, when the parties spent an hour arguing the merits of defendants' forthcoming motion to dismiss, and the Court set a briefing schedule for the motion. Instead, the real reason plaintiffs want to file another amended complaint is buried on the third page of their pre-motion letter: to "add additional plaintiffs." But no legitimate reason exists to add more plaintiffs. Plaintiffs purport to believe that this case properly is brought as a class action, and they already have 46 plaintiffs asserting claims on behalf of their putative classes. Furthermore, plaintiffs have not identified any defect in their existing complaint that the addition of new plaintiffs would fix.

Accordingly, at best, plaintiffs' request to file another amended complaint is a delay tactic. At worst, it is an effort to manufacture yet another media event so plaintiffs can continue to attack Mr. Nygard through the press instead of actually litigating the case they brought. Either way, the request should be denied, and the factors relevant to evaluating the request require that it be denied. The proposed second amended complaint (i) is not proposed in good faith, (ii) would cause undue delay, (iii) would prejudice defendants (by delaying unnecessarily their ability to litigate this case and clear their names), and (iv) would be futile. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200-01 (2d Cir. 2007). Further, that plaintiffs are seeking an additional 21 days to file their proposed new complaint (beyond the two weeks that already have elapsed since the May 7, 2020 pre-motion conference), Ltr. at 3, is inexplicable.

As to plaintiffs' allegations regarding alleged spoliation, they have been a moving target, and ultimately do not support the assertions in plaintiffs' pre-motion letter. When plaintiffs' counsel first raised the issue of supposed spoliation—in letters dated February 25 and 26, 2020, Ex. A—they asserted that they "ha[d] been informed that Mr. Nygard ordered the destruction of servers," and "Mr. Nygard's employees and/or affiliates in the Bahamas and Winnipeg [were] instructed to spoliate evidence by wiping or otherwise destroying their hard disk drives or other computer storage devices." After declining to share the information on which they relied in making those allegations (so we could, as we explained, use that information in connection with the inquiries we were conducting), Ex. B, on March 10, 2020, plaintiffs' counsel made a different, much vaguer assertion, *i.e.*, that they had been "informed by various people with access to knowledgeable persons that there were instructions to delete evidence," *id.*

We then heard nothing further from plaintiffs' counsel on this issue until April 13, 2020, when they filed an objection in a related bankruptcy proceeding and made a very different assertion from the ones they had made previously to us—namely, that "Plaintiffs ha[d] recently received reliable information from several sources that support an allegation that, one day after the class action complaint was filed, upper-level executives of the Nygard Companies instructed

2

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

their corporate IT employees to 'clean up' the corporate website and corporate social media accounts . . . ." Ex. C ¶ 3.

      Counsel's April 13 assertion that unnamed "executives" had instructed IT employees to "clean up" a public-facing website and public-facing social media accounts is, of course, very different than their prior assertions that "*Mr. Nygard ordered the destruction of servers*" and that "*Mr. Nygard's employees and/or affiliates in the Bahamas and Winnipeg [were] instructed to spoliate evidence by wiping or otherwise destroying their hard disk drives or other computer storage devices*."  Also inconsistent with those prior assertions was counsel's last communication to us on this issue—a May 4, 2020 email, in which they asserted that two specific individuals, "on behalf of Peter Nygard and the corporate entities, instructed IT personnel to 'clean up' the corporate website and Google search indexes to remove photos and videos of [their] clients with various witnesses and/or victims."  Ex. B.

      The shifting nature of plaintiffs' allegations of spoliation is illustrative of their lack of merit.  Plaintiffs' counsel apparently had no basis whatsoever for their initial assertions that "Mr. Nygard ordered the destruction of servers" and that "instruct[ions were given] to . . . wip[e] or otherwise destroy[] [] hard disk drives or other computer storage devices."  More importantly, counsel's most recent allegations do not even reflect spoliation.  The alleged removal of photos and videos from public-facing websites does not equate to the destruction of such photos or videos.  Moreover, since receiving plaintiffs' counsel's May 4 email, we have spoken to the two individuals they identified in the email—as well as Greg Fenske (who plaintiffs claim improperly deleted documents, even though the Receiver has not made any finding of impropriety, Ex. D ¶ 23)—and all three categorically denied either destroying documents, or being directed to do so.

      No dispute exists that defendants issued an appropriate litigation hold notice on February 26, 2020, *i.e.*, within days of the filing of this lawsuit and one day after plaintiffs first raised allegations of spoliation.  Moreover, for the reasons set forth above, plaintiffs' assertion that improper document destruction occurred appears to be meritless.[1]  In any event, as plaintiffs well know, the Receiver (i) has taken possession of the relevant Nygard company documents and servers, (ii) currently is assessing (with the assistance of its own, independent counsel) whether any improper destruction of documents occurred, (iii) to date has not made any determination on the matter, and (iv) in due course, will report its findings to the Canadian court overseeing the receivership. Ex. D ¶¶ 20-23.  The issue of purported spoliation thus is a red herring, meant to generate negative publicity against defendants and divert attention away from plaintiffs' lack of justification for further amending their complaint.  Plaintiffs' request for a pre-motion conference on both issues thus should be denied.

---

[1] Plaintiffs' counsel's suggestion that we were required to delineate the specific actions we took in response to their allegations of spoliation—and that, in declining to do so, we "concealed the truth" (Ltr. at 1)—also is meritless.  In any event, the actions recounted herein (issuing a proper litigation hold and speaking to relevant witnesses) confirm that reasonable and appropriate measures were taken in response to plaintiffs' allegations.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

                                           Respectfully submitted,

                                           /s/  Christopher B. Harwood

cc:      Plaintiffs' counsel (by ECF)

---

The parties are directed to appear for a telephonic pre-motion conference on June 2, 2020 at 11:00 AM. The parties may reach the Court at (877) 411-9748; access code: 3029857.

_____
Edgardo Ramos, U.S.D.J
Dated: May 22, 2020
New York, New York

4