# Exhibit C

Steven J. Reisman, Esq.
Jerry L. Hall, Esq.
Cindi M. Giglio, Esq.
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, NY 10122
Telephone: (212) 940-8800
Facsimile: (212) 940-8876
sreisman@katten.com
jerry.hall@katten.com
cindi.giglio@katten.com

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| NYGARD HOLDINGS (USA) LIMITED, et al.,[1] | Case No. 20-10828 (___) |
| Debtors in a Foreign Proceeding. | Joint Administration Requested |

**VERIFIED PETITION UNDER CHAPTER 15 FOR**
**RECOGNITION OF A FOREIGN MAIN PROCEEDING AND RELATED RELIEF**

Richter Advisory Group Inc. ("Richter") is acting solely in its capacity as court-appointed receiver (and not in its personal or corporate capacity) (the "Receiver") and authorized foreign representative (the "Foreign Representative") of:

(a)    Nygard Holdings (USA) Limited ("Holdings");

Nygard Inc. ("Inc.");

Nygard NY Retail, LLC ("NY Retail"); and

Fashion Ventures, Inc. ("Fashion") (collectively, the "U.S. Debtors"); and

---

[1]    The Debtors in these Chapter 15 cases, along with the last four digits of each Debtor's U.S. Federal Employer Identification Number ("FEIN") or Canada Revenue Agency Business Registration Number ("CRA"), are: Nygard Holdings (USA) Limited (FEIN 3048), Nygard Inc. (FEIN 0509), Nygard NY Retail, LLC (FEIN 1672), Fashion Ventures, Inc. (FEIN 0956), Nygard International Partnership (FEIN 1535), Nygard Properties Ltd. (CRA 0003), Nygard Enterprises Ltd. (FEIN 7127), 4093887 Canada Ltd. (FEIN 1534), 4093879 Canada Ltd. (FEIN 1533).

(b)     Nygard International Partnership ("International");
        Nygard Properties Ltd. ("Properties");
        Nygard Enterprises Ltd. ("Enterprises");
        4093887 Canada Ltd. ("4093887"); and
        4093889 Canada Ltd. ("4093889") (collectively, the "Canadian Debtors,"

and together with the U.S. Debtors, the "Debtors").

Each of the Debtors was placed in a receivership on March 18, 2020 by order (the "Receivership Order") of the Court of Queen's Bench Manitoba (the "Canadian Court"), Court File No. CI 20-01-26627 (the "Canadian Proceeding"), a certified copy attached as **Exhibit A**.

The Foreign Representative respectfully submits this verified petition (the "Verified Petition", and together with the Forms of Voluntary Petition [Dkt 1], the "Petition") seeking entry of an order pursuant to sections 105(a), 1504, 1507, 1509, 1515, 1517, 1520, and 1521 of title 11, United States Code (as amended, the "Bankruptcy Code"), substantially in the form attached as **Exhibit B**, granting recognition of the Foreign Proceeding as a foreign main proceeding, and granting related relief.[2]

In support of the Petition, the Foreign Representative respectfully submits the *Declaration of Gilles Benchaya in Support of (I) Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and Related Relief and (II) Motion of the Receiver for Provisional Relief in Aid of a Foreign Main Proceeding* (the "Benchaya Declaration"), which has been contemporaneously filed and is incorporated by reference. In further support of the relief requested, the Foreign Representative respectfully represents as follows:

---

[2]     References to sections and chapter are references to sections and chapters of the Bankruptcy Code unless otherwise stated.

## PRELIMINARY STATEMENT[3]

On March 18, 2020, upon the application of White Oak, a lender under the Debtors' Credit Facility, Richter was appointed as the Debtors' Receiver by the Canadian Court. White Oak's decision to seek the Receivership Order resulted from a series of defaults under the Credit Agreement and an overall erosion of confidence in the Debtors and their ability to operate their businesses. White Oak's concerns regarding the Debtors were exacerbated when they learned that Peter Nygard, the Debtors' principal, had been sued in the Class Action Lawsuit alleging (i) Mr. Nygard raped and sexually assaulted multiple children and women and (ii) the defendant U.S. Debtors knowingly aided and abetted him in a decades-long sex-trafficking scheme. Days later, the Nygard Group's New York offices were raided by the F.B.I. in connection with such allegations. The repeated defaults under the Credit Agreement and grave uncertainty regarding the Debtors' ability to continue their operations led White Oak to deliver the Debtors, on February 26, 2020, a Demand and Section 244 Notice demanding repayment and advising the Debtors of White Oak's intention to enforce against its security. Moreover, given the limited cooperation that the Lenders and Richter were receiving from the Debtors, White Oak believed that a formal receivership proceeding under the BIA was essential to bring transparency and supervision to the Debtors' financial affairs.

The Canadian Court has vested Richter, in its capacity as Receiver, with the authority to manage all the financial aspects of the Debtors' businesses in order to monetize the Debtors' assets and secure repayment for the Debtors' creditors in a value-maximizing manner. Richter anticipates that the Canadian Court will issue further orders that will allow Richter to maximize the value of the Debtors' assets, including but not limited to orders authorizing the sale or

---

[3]   Initially capitalized terms in the Preliminary Statement are defined below.

liquidation of the Debtors' assets. Specifically, the Foreign Representative anticipates that the Canadian Court will issue orders directing the sale, liquidation, or other disposition of the Debtors' assets. Because certain of the Debtors' assets (including a distribution center holding approximately $13 million of inventory at cost) are within the jurisdiction of the United States, the Foreign Representative seeks recognition to, among other things, give effect to the orders of the Canadian Court and obtain a stay of any action against the Debtors' United States property (except as hereafter noted).

The Foreign Representative wishes to make clear from the outset that it does not intend to interfere with the relief the plaintiffs are seeking in the Class Action Lawsuit, and is not seeking to stay the Class Action Lawsuit. The Foreign Representative does, however, seek a stay of any action by the Class Action Lawsuit plaintiffs as judgment creditors, including without limitation any attempt to record, collect or otherwise enforce any judgment resulting from the Class Action Lawsuit, absent further order of this Court.

## **BACKGROUND**

1. The Debtors, with various non-debtor entities respectively organized under the laws of the United States of America, Canada, and other jurisdictions (collectively, the "Nygard Group"), comprise a clothing designer, manufacturer, supplier, and retailer with a head office located in Winnipeg, Manitoba, Canada, which acts as the "nerve center" of the Debtors' businesses. Substantially all accounting functions, strategic decision making, communications functions, marketing and pricing decisions, new business development initiatives, negotiation of material contracts and leases, IT services, retail, services, design, merchandising, production, and distribution functions are managed centrally from the head office in Winnipeg. The Nygard Group also has offices in New York City, Shanghai (where its research and design teams are based), Los

Angeles, California (where its U.S. logistics operations are based), and Toronto (where its international sales and marketing team is based). It has three distribution centers located in Los Angeles (leased), and Toronto and Winnipeg (both owned by Properties). The Nygard Group sources inventory from third-party garment manufacturers in Jordan, Bangladesh, Indonesia, Vietnam, and China. The Nygard Group has multiple product lines and fashion brands, including Peter Nygard Collections, Bianca Nygard, Nygard SLIMS, ALIA, ADX, and TanJay. The Nygard Group employs approximately 1,450 people worldwide, of whom approximately 100 are located in the United States. The Nygard Group operates 167 retail stores in Canada and two retail stores in the United States, and upon information and belief, supplied other retailers such as Dillard's Inc. ("Dillard's") and Costco Wholesale Canada Ltd. ("Costco") until recently.

2.       The Debtors and the other entities comprising the Nygard Group, are 100% privately owned and controlled by Peter J. Nygard, either directly or through a series of holding companies.

3.       The Debtors are parties to that certain credit agreement dated as of December 30, 2019 (the "Credit Agreement") with (i) Second Avenue Capital Partners, LLC ("Second Avenue"), as documentation agent and a lender, and (i) White Oak Commercial Finance, LLC ("White Oak," and together with Second Avenue, the "Lenders") as administrative agent and collateral agent and a lender. Pursuant to the Credit Agreement, among other things, the Lenders agreed to make formula-based revolving loans to the U.S. Debtors not to exceed $40,000,000, secured by liens or security interests in substantially all personal property of the U.S. Debtors, and guaranteed by the Canadian Debtors and secured by substantially all of their personal property and certain real property located in Canada (the "Credit Facility"). The Credit Agreement is governed by the laws of the State of New York, and contains a forum selection clause in which the Debtors submitted

to the jurisdiction of federal and state courts located in New York County, New York, with respect to any proceedings arising out of or related to the Credit Agreement, and waived objections to the venue of such courts with respect to such proceedings.

4.    Almost immediately after closing the Credit Facility, on or about January 3, 2020, the Debtors committed various events of default under the Credit Agreement, and among other things, provided the Lenders with cash-flow forecasts and funding requests that contemplated a cash need that was several millions of dollars in excess of the amount available pursuant to the Credit Agreement's borrowing base calculation.

5.    The Lenders, with the assistance of Richter and despite limited cooperation from the Debtors and their principal Peter Nygard, made significant efforts to understand the Debtors' increased funding needs and potential solutions for the Nygard Group's liquidity crisis.

6.    In the midst of the foregoing, the Lenders learned that Peter Nygard and several of the U.S. Debtors had been sued in a class action lawsuit in the United States District Court for the Southern District of New York captioned *Jane Does Nos. 1-10, individually and on behalf of all others similarly situated v. Peter J. Nygard, Nygard Inc, Nygard International Partnership, and Nygard Holdings Limited,* case no. 1:20-cv-01288 (the "Class Action Lawsuit"). The Class Action Lawsuit alleges, among other things, that Mr. Nygard raped and sexually assaulted multiple children and women and that the defendant U.S. Debtors knowingly aided and abetted him in a decades-long sex-trafficking scheme. The Debtors advised White Oak of the Class Action Lawsuit nearly one week after its issuance, in breach of the Credit Agreement's requirement that the Nygard Group promptly notify White Oak of any litigation that could reasonably be expected to result in a material adverse effect on the business.

7.      One week later, on February 25, 2020, a Federal Bureau of Investigation and New York Police Department task force raided the Nygard Group's New York City offices in connection with an investigation into sex trafficking.   Later that day, Mr. Nygard publicly announced that he would resign from the Nygard Group and divest his interest therein.   The same day, the Nygard Group's largest customer, Dillard's, released a public statement that it had refused current deliveries, canceled all existing orders, and suspended all future purchases from the Nygard Group.   Dillard's termination of its relationship with the Nygard Group constituted yet another event of default under the Credit Agreement.

8.      On February 26, 2020, White Oak delivered to the Debtors a demand for repayment and notice of intention to enforce its rights against its security pursuant to section 244 of the *Bankruptcy and Insolvency Act of Canada* (the "BIA") (the "Demand and Section 244 Notice"). The Demand and Section 244 Notice specified the existing and continuing events of default known to White Oak and demanded the full payment of the outstanding indebtedness in the amount of $25,870,783.37.   Pursuant to certain security agreements entered into by White Oak and certain of the Canadian Debtors, White Oak has the right to appoint a receiver upon the occurrence of an event of default under the Credit Agreement.[4]

9.      On March 18, 2020, the Canadian Court entered the Receivership Order.   The Foreign Representative was appointed as receiver of all assets, undertakings, and properties of the Debtors pursuant to section 101 of the *Courts of Queen's Bench Act* of the Province of Manitoba and section 243(1) of the BIA. The Receivership Order vests the Foreign Representative with broad power and control over the Debtors' assets and businesses, including by granting the Foreign Representative express and sole authority to control the Debtors' businesses and administer the

---

[4]     Credit Agreement at § 5.1(a)(i).

Debtors' assets. Richter anticipates that the Canadian Court will issue orders that will allow Richter to monetize the Debtors' assets in a value-maximizing manner. The Receivership Order also provides that the Debtors' creditors are enjoined from taking action against the Debtors and their assets, wherever located. Receiver Order at ¶ 12-14.

10.     Notwithstanding the worldwide application of the stay imposed by the Receivership Order, the Debtors' creditors may attempt to take enforcement actions against the Debtors' assets located within the territorial jurisdiction of the United States or refuse to recognize (or interfere with) the Foreign Representative's authority to control, as receiver, the Debtors' businesses and administer their assets.

11.     Accordingly, the Foreign Representative seeks recognition of the Canadian Proceeding and enforcement of the Receivership Order to obtain the benefit of the automatic stay and other protections afforded under chapter 15 in relation to the Debtors' assets located within the territorial jurisdiction of the United States. Notwithstanding the foregoing, the Foreign Representative does not seek to stay the Class Action Lawsuit through judgment. The Foreign Representative does seek a stay, however, subject to the Class Action Lawsuit plaintiffs seeking relief from this Court, to the extent the Class Action Lawsuit plaintiffs are acting as judgment creditors, including without limitation attempts to record, collect or otherwise enforce any judgment resulting from the Class Action Lawsuit.

## JURISDICTION AND VENUE

12.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference to Bankruptcy Judges of the District Court for the Southern District of New York*, dated January 31, 2012 (Preska, C.J.). Recognition of a foreign

proceeding and other matters under chapter 15 are core proceedings under 28 U.S.C. § 157(b)(2)(P).

13.     The Foreign Representative, solely in its capacity as authorized foreign representative, and not in its personal or corporate capacity, consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1410(1) and (3). U.S. Debtor NY Retail is a New York limited liability company with offices and a retail location in New York, New York. Furthermore, as stated above, the Credit Agreement is governed by New York law and contains a New York forum selection clause. Credit Agreement §10.14. Moreover, each of the Debtors has property located in New York consisting of a retainer deposited with counsel to the Foreign Representative that is being held in a New York bank account for the benefit of all of the Debtors. *See In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R. 650, 655 (Bankr. S.D.N.Y. 2016) (holding that deposits in a New York bank account, an attorney retainer on deposit in New York, and New York law-governed debt containing a New York forum selection clause "whether considered alone or together . . . provide a sufficient basis for jurisdiction and venue in New York"); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 413-16 (Bankr. S.D.N.Y. 2014) (holding that a New York bank account over which a chapter 15 debtor possessed power to direct disbursement of funds was property sufficient to establish venue for chapter 15 case in New York). Finally, the Debtors' U.S. assets also include inventory and equipment located in California having an estimated cost value in excess of $12 million. Given that the Debtors' U.S. assets are located in more than one state, venue in this District is also consistent with the interests of justice and the convenience of the parties pursuant to 28 U.S.C. § 1410(3).

15.     This case has been properly commenced pursuant to sections 1504, 1509, and 1515 by the filing of the Petition.  The statutory predicates for the relief requested are sections 105(a), 1504, 1507, 1509, 1515, 1517, 1520, and 1521.

## RELIEF REQUESTED

16.     The Foreign Representative respectfully requests entry of the Proposed Order, substantially in the form attached as **Exhibit B**:

<blockquote>

(a)     finding that (i) each of the Debtors is eligible to be a "debtor" under chapter 15, (ii) the Canadian Proceeding is a "foreign main proceeding" within the meaning of section 1502, (iii) the Receiver satisfies the requirements of a "foreign representative" under section 101(24), and (iv) the Petition was properly filed and meets the requirements of section 1515;

(b)     granting recognition of the Canadian Proceeding as a "foreign main proceeding" under sections 1517 and 1520;

(c)     granting all relief afforded to foreign main proceedings under section 1520;

(d)     recognizing, granting comity to, and giving full force and effect within the territorial jurisdiction of the United States to the Receivership Order, including any extensions or amendments thereof authorized by the Canadian Court;

(e)     granting additional relief under sections 1521 and 1507, including for purposes of applying section 365 in these chapter 15 cases; and

(f)     granting such other related relief as may be necessary and appropriate, including entry of a final decree after entry of the order granting the relief requested herein.

</blockquote>

17.     This court should grant the relief requested because "[c]ourts in the United States uniformly grant comity to Canadian proceedings." *In re Davis*, 191 B.R. 577, 587 (Bankr. S.D.N.Y. 1996), *corrected* (Feb. 20, 1996) (granting recognition of proceedings under the BIA in ancillary cases under former section 304).

## BASIS FOR RELIEF

### I. The Court should Recognize the Canadian Proceeding as a "Foreign Main Proceeding"

18.     The Canadian Proceeding is entitled to recognition as a "foreign main proceeding" under chapter 15 because, among other things:

(a)     the Canadian Proceeding is a "foreign proceeding" within the meaning of section 101(23);

(b)     the Receiver is a "foreign representative" within the meaning of section 101(24);

(c)     the Petition was filed in accordance with sections 1504 and 1509, and meets the requirements of sections 1504 and 1515; and

(d)     the Debtors' center of main interests is in Canada.

#### a.     The Canadian Proceeding is a "Foreign Proceeding"

19.     To be recognized under chapter 15, a proceeding must qualify as a "foreign proceeding." *See* 11 U.S.C. § 1517(a). Section 101(23) defines "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). The Canadian Proceeding satisfies this definition. The Canadian Proceeding is a collective judicial proceeding brought in a foreign country (Canada) under the BIA (a federal Canadian statute relating to insolvency, similar to the Bankruptcy Code) that is supervised by a foreign court (the Canadian Court) for the purpose of liquidation. The Canadian Proceeding is similar to a chapter 7 case under the Bankruptcy Code, as both statutory regimes are designed to facilitate the orderly liquidation of a debtor, stay individual creditor collection efforts, create a centralized proceeding to assert and resolve claims against the debtors and their property, and provide a fair and equitable process for distribution to creditors.

20.    United States bankruptcy courts have recognized the comprehensive and collective nature of BIA proceedings, as well as their striking similarity to chapter 7 cases under the Bankruptcy Code:

> The BIA contains a comprehensive procedure for the orderly marshalling and equitable distribution of a Canadian debtor's assets which closely resembles that available under the [Bankruptcy] Code. For example, the principal duties of a trustee under the BIA mirror those imposed upon a chapter 7 or 11 trustee under the [Bankruptcy] Code. Likewise, the automatic stay under the BIA § 69 is similar to that imposed by § 362 of the [Bankruptcy] Code. Like the [Bankruptcy] Code, the BIA recognizes the rights of secured creditors to realize on their collateral, protects that collateral from the claims of unsecured creditors and preserves the right of an undersecured creditor to assert a deficiency claim. It makes provision for the avoidance of fraudulent transfers or preferential payments, see BIA §§ 95, 96, and contains a comprehensive distribution scheme similar to that under the [Bankruptcy] Code.

*In re Davis*, 191 B.R. at 587; s*ee also In re Fracmaster, Ltd.*, 237 B.R. 627, 632 n.5 (Bankr. E.D. Tex. 1999) ("[t]he Bankruptcy and Insolvency Act is the primary federal statute which deals with insolvency issues under Canadian law. It provides a system under which the creditors of a bankrupt can pursue their claims by collective action through a trustee, so that the bankrupt's assets can be administered and distributed on an equitable basis, subject to the priorities of the preferred creditors and the rights of secured creditors.").

21.    Given the extensive similarities between BIA proceedings and chapter 7 cases, United States bankruptcy courts, including in this District, routinely recognize BIA proceedings as "foreign proceedings" under section 101(23). *See, e.g., In re Sherson Group Inc.*, Case No. 15-11765 (SHL) (Bankr. S.D.N.Y. July 27, 2015); *In re Mundo Media Ltd., et al.*, Case No. 19-11365 (KBO) (Bankr. D. Del. July 11, 2019); *In re Unique Broadband Systems Ltd.*, Case No. 19-11321

(KG) (Bankr. D. Del. July 8, 2019); *In re Axios Logistics Solutions, Inc.*, Case No. 17-10438 (BLS) (Bankr. D. Del. Mar. 28, 2017).[5]

### b. The Receiver is the Authorized "Foreign Representative"

22. The chapter 15 petition for recognition of a foreign proceeding must be filed by a foreign representative that is a person or body. *See* 11 U.S.C. § 1517(a)(2). Section 101(24) provides:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24). Under the Bankruptcy Code, the term "person" includes any "individual, partnership, and corporation" that is not a governmental unit. *See* 11 U.S.C. § 101(41).

23. These chapter 15 cases were commenced by the duly appointed "foreign representative" of the Debtors within the meaning of the Bankruptcy Code. First, the Receiver is a limited company organized under the laws of Canada, and is not a governmental unit, and therefore is a "person" within the meaning of the Bankruptcy Code. Second, the Receiver is authorized in the Canadian Proceeding both to administer the liquidation of the Debtors' assets and affairs and to "apply to any court . . . wherever located, for the recognition of [the Receivership Order] and for assistance in carrying out the terms of [the Receivership Order] . . . ." Receivership Order ¶ 35-6.

---

[5]     *See also In re Thane Int'l, Inc.*, Case No. 15-12186 (KG) (Bankr. D. Del. Dec. 1, 2015); *In re Calmena Energy Servs. Inc., et al.*, Case No. 15-30786 (KKB) (Bankr. S.D. Tex. Mar. 5, 2015); *In re Talon Sys. Inc., et al.*, Case No. 13-11811 (KJC) (Bankr D. Del. Aug. 30, 2013); *In re Tercon Inv. Ltd.*, Case No. 13-00015 (HAR) (Bankr. D. Alaska Feb. 19, 2013); *In re Wellpoint Sys., Inc., et al.*, Case No. 11-10423 (MFW) (Bankr. D. Del. Feb. 25, 2011); *In re EarthRenew IP Holdings LLC, et al.*, Case No. 10-13363 (CSS) (Bankr. D. Del. Nov. 10, 2010); *In re Innua Canada Ltd., et al.*, Case No. 09-16362 (DHS) (Bankr. D.N.J. Apr. 15, 2009); *In re CPI Plastics Grp. Ltd.*, Case No. 09-20175 (JES) (Bankr. E.D. Wis. Feb. 10, 2009).

24.     For these reasons, the Receiver qualifies as a "foreign representative" within the meaning of the Bankruptcy Code.

###     c.     The Petition was Properly Filed and Meets all Applicable Requirements of the Bankruptcy Code

25.     To properly commence a chapter 15 case, a foreign representative must file a petition for recognition of a foreign proceeding under section 1515, and the petition must be accompanied by (i) a certified copy of the decision commencing the foreign proceeding and appointing the foreign representative, (ii) a certificate from the foreign court affirming such order exists, or (iii) other acceptable evidence that the foreign proceeding exists and the foreign representative has been duly appointed.  *See* 11 U.S.C. § 1515(b).  The petition must also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative. *See* 11 U.S.C. § 1515(c).  All documents must be in English or translated into English.  *See* 11 U.S.C. § 1515(d).

26.     As required by sections 1504 and 1509, the Foreign Representative duly and properly commenced these chapter 15 cases by filing the Petition under section 1515(a) accompanied by all documents and information required by subsections (b)-(d).  **Exhibit B** is the certified copy of the Receivership Order, which is the decision of the Canadian Court commencing the Canadian Proceeding and appointing the Receiver as foreign representative, thereby satisfying section 1515(b).  A verified statement certifying that the only foreign proceeding of which the Receiver is aware is the Canadian Proceeding, attached as **Exhibit C**, which satisfies section 1515(c).  Finally, the Receivership Order is in English, thereby satisfying section 1515(d).

27.     Accordingly, the Petition was properly filed and satisfies all applicable requirements of the Bankruptcy Code.

### d. The Canadian Proceeding is a "Foreign Main Proceeding"

28. The Canadian Proceeding should be recognized as a "foreign main proceeding," as defined in sections 101(23) and 1502(4). A foreign proceeding will be recognized as a foreign main proceeding if "it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b)(1). Section 1516(c) establishes a rebuttable presumption that the debtor's registered office is the debtor's center of main interests ("COMI"). *See* 11 U.S.C. § 1516(c). When considering a debtor's COMI, courts may consider the analogous concept of an entity's "principal place of business" or "nerve center." Courts look to factors such as:

> the location of the debtor's headquarters; the location of those who actually manage the debtor . . . ; the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and the jurisdiction whose law would apply to most disputes.

*In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R. at 654 (internal citations omitted); *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 130 (2d Cir. 2013). A debtor's COMI is determined as of the date the chapter 15 case is commenced. *Fairfield Sentry Ltd*, 714 F.3d at 134.

29. The above factors support a finding that the Debtors' COMI is Canada. The Canadian Debtors maintain their registered offices in Canada and are therefore entitled to the statutory presumption that their COMI is located there. All of the Debtors' business operations, financing, and strategic decision-making were all located in, or executed from, Winnipeg, Manitoba, Canada, as of the date of commencement of these chapter 15 cases. As set forth above, the strategic and operational "nerve center" of the Debtors, and the entire Nygard Group's global operations, is located in Winnipeg.[6] Accordingly, at the time the Petition was filed, each Debtor's COMI was located in Canada, where the Canadian Proceeding is pending.

---

[6]    In addition, where (as here) chapter 15 debtors are organized under the laws of varying jurisdictions, if "Jurisdiction A" is the debtors' nerve center and the number and degree of activity of the debtors organized under

## II.     The Debtors are Entitled to Automatic Relief under Section 1520

30.     Section 1520(a) sets forth a series of statutory protections that automatically result from the recognition of a foreign main proceeding, including the application of the protection afforded by the automatic stay under section 362(a) to the debtors and their property located within the territorial jurisdiction of the United States. *See* 11 U.S.C. § 1520(a). Given that the protections set forth in section 1520(a) flow automatically from the recognition of a foreign main proceeding under section 1517, the Foreign Representative respectfully submits that no further showing is required to the extent the Court recognizes the Canadian Proceeding as a foreign main proceeding.

## III.     Additional Relief is Appropriate

31.     Section 1521 provides, in relevant part, that the court may grant a foreign representative "any appropriate relief," including "any relief that may be available to a trustee," subject to certain limitations (which do not apply here) where necessary to effectuate the purpose of chapter 15 and to protect the debtor's assets and creditors' interests. 11 U.S.C. § 1521(a); *see In re Rede Energia S.A.*, 515 B.R. 69, 91 (Bankr. S.D.N.Y. 2014) (*citing In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333-34 (S.D.N.Y. 2008)) (noting that chapter 15 empowers "courts with broad, flexible rules to fashion relief that is appropriate to effectuate the objectives of the chapter in accordance with comity."); *see also In re SPhinX, Ltd.*, 351 B.R. 103, 112 (Bankr. S.D.N.Y. 2006) ("chapter 15 maintains – and in some respects enhances – the 'maximum flexibility' . . . that section 304 provided bankruptcy courts in

---

the laws of Jurisdiction A is greater than the number and degree of activity of those debtors that are not, the COMI of all debtors is Jurisdiction A. *See, e.g., In re Catalyst Paper Corp.,* Case No. 12-10221 (PJW) (Bankr. D. Del. Jan. 17, 2012) (Hr'g Tr. 28:14-20) (Walsh, J.): "[r]egarding the COMI issue, I've seen practically the same scenario at least on two other occasions in the last few years where the number and activity of the Canadian debtors outweighs the number and activity of the United States debtors, and where the shots that are called come out of Canada, not the United States. And I think it's a very conventional recognition that I'll approve.").

handling ancillary cases in light of principles of international comity and respect for the laws and

judgments of other nations.") (internal citations omitted). As this Court has explained,

> While recognition of the foreign proceeding turns on the objective criteria
> under § 1517, relief [post-recognition] is largely discretionary and turns on
> subjective factors that embody principles of comity. Once a case is
> recognized as a foreign main proceeding, chapter 15 specifically
> contemplates that the court will exercise its discretion consistent with the
> principles of comity.

*In re Sino-Forest Corp.*, 501 B.R. 655, 664 (Bankr. S.D.N.Y. 2013) (internal citations and

quotations omitted). Here, the Court should exercise its discretion under sections 1507 and 1521,

consistent with the principles of comity, to recognize and enforce the Canadian Proceeding and

the Recognition Order.[7]

32.     The Foreign Representative requests relief under section 1521 to protect the

Debtors' assets located within the territorial jurisdiction of the United States, including:

(a)     staying the commencement or continuation of an individual action or
proceeding concerning the Debtors' assets, rights, obligations or liabilities
to the extent they have not been stayed under section 1520(a) (including as
it may relate to the Class Action Lawsuit as set forth herein);

(b)     staying execution against the Debtors' assets to the extent it has not been
stayed under section 1520(a);

(c)     suspending the right to transfer, encumber, or otherwise dispose of any
assets of the Debtors to the extent this right has not been suspended under
section 1520(a);

(d)     providing for the examination of witnesses, the taking of evidence, or the
delivery of information concerning the Debtors' assets, affairs, rights,
obligations, or liabilities;

(e)     entrusting the administration or realization of all or part of the Debtors'
assets within the territorial jurisdiction of the United States to the Foreign
Representative authorized by the Court;

---

[7]     The relief requested herein is also consistent with section 1525(a), which provides that "[c]onsistent with section
1501, the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative,
either directly or through the trustee." 11 U.S.C. § 1525(a).

    (f)      extending relief granted under section 1519(a); and

    (g)      granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a).

33.     In particular, the Foreign Representative requests applying section 365 to the Debtors under section 1521(a)(7). Section 365 prevents counterparties from terminating their contracts or halting performance as a result of the debtor's insolvency. *See, e.g., In re Lehman Bros. Holdings Inc.*, 422 B.R. 407, 414 (Bankr. S.D.N.Y. 2010) (explaining that section 365 invalidates provisions of law or contract which specify that a bankruptcy filing per se will terminate or modify the contract). Here, application of section 365 will facilitate the Receiver's liquidation efforts without interference by contract counterparties. Accordingly, applying section 365 is warranted in these chapter 15 cases, as it has been in other chapter 15 cases. *See, e.g., In re Mundo Media Ltd., et al.*, Case No. 19-11365 (KBO) (Bankr. D. Del. July 11, 2019) (applying section 365 in chapter 15 case recognizing BIA proceedings); *In re Axios Logistics Solutions, Inc.*, Case No. 17-10438 (BLS) (Bankr. D. Del. Mar. 28, 2017) (same); *Essar Steel Algoma Inc.*, Case No. 1512271 (BLS) (Bankr. D. Del. Dec. 1, 2015) (applying section 365 in chapter 15 case recognizing proceedings under the Companies' Creditors Arrangement Act of Canada).

34.     The Court may also provide the foreign representative with "additional assistance" under section 1507. *See* 11 U.S.C. § 1507(a). The relief requested satisfies section 1507 because it is consistent with principles of comity. *Id.* at § 1507(b). Moreover, the relief requested is not manifestly contrary to U.S. public policy. *See* 11 U.S.C. § 1506.

## NOTICE

35.     Notice of this Verified Petition has been provided to: (i) the United States Trustee for the Southern District of New York (Attn: Paul K. Schwartzberg, Esq.); (ii) the Debtors; (iii) Peter J. Nygard; (iv) all persons or bodies authorized to administer foreign proceedings of the

Debtors, including the Canadian Proceeding; (v) all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code; (vi) all parties to litigation pending in the United States to which any of the Debtors is a party at the time of the filing of the Petition; and (vii) all parties that have filed a notice of appearance in these chapter 15 cases. The Foreign Representative submits that such notice is proper and that no other or further notice need be provided.

## NO PRIOR REQUEST

36.     No prior request for the relief sought in this Petition has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Foreign Representative respectfully requests entry of an order, substantially in the form attached as **Exhibit B**, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: March 18, 2020
      New York, NY

Respectfully submitted,

By: */s/ Steven J. Reisman*        
Steven J. Reisman, Esq.
Jerry L. Hall, Esq.
Cindi M. Giglio, Esq.
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, NY 10122
Telephone: (212) 940-8800
Facsimile: (212) 940-8776
sreisman@katten.com
jerry.hall@katten.com
cindi.giglio@katten.com

*Counsel to the Foreign Representative*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 15 |
| NYGARD HOLDINGS (USA) LIMITED, et al.,[8] | Case No. 20-10828 (___) |
| Debtors in a Foreign Proceeding. | Joint Administration Requested |

## <u>STATEMENT OF VERIFICATION</u>

I, Gilles Benchaya, as Partner of the Foreign Representative, hereby declare under penalty of perjury and pursuant to 28 U.S.C. § 1746:

1.    The Foreign Representative is the Debtors' duly authorized foreign representative. The Foreign Representative is duly authorized to file this Petition and to commence and act in this Chapter 15 Case.

2.    I have read the foregoing Verified Petition and believe that its factual allegations are true and accurate to the best of my knowledge, information, and belief.

3.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Date:  March 18, 2020
New York, New York

*/s/ Gilles Benchaya*_____
Gilles Benchaya

---

[8]    The Debtors in these Chapter 15 cases, along with the last four digits of each Debtor's U.S. Federal Employer Identification Number ("FEIN") or Canada Revenue Agency Business Registration Number ("CRA") , are: Nygard Holdings (USA) Limited (FEIN 3048), Nygard Inc. (FEIN 0509), Nygard NY Retail, LLC (FEIN 1672), Fashion Ventures, Inc. (FEIN 0956), Nygard International Partnership (FEIN 1535), Nygard Properties Ltd. (CRA 0003), Nygard Enterprises Ltd. (FEIN 7127), 4093887 Canada Ltd. (FEIN 1534), 4093879 Canada Ltd. (FEIN 1533).

## Exhibit A

**Receivership Order**

FILED IN THE C. Laniuk, Deputy Registrar
COURT OF Wed Mar 18 2020
QUEEN'S BENCH 16:05:44 (Central Standard Time)

Doc No. 29

File No. CI 20-01-26627

THE QUEEN'S BENCH
<u>Winnipeg Centre</u>

IN THE MATTER OF:  THE APPOINTMENT OF A RECEIVER PURSUANT TO
SECTION 243 OF THE *BANKRUPTCY AND
INSOLVENCY ACT*, R.S.C., C. B-3, AS AMENDED,
AND SECTION 55 OF *THE COURT OF QUEEN'S
BENCH ACT*, C.C.S.M., C. C280, AS AMENDED

BETWEEN:

WHITE OAK COMMERCIAL FINANCE, LLC

Applicant

- and -

NYGÅRD HOLDINGS (USA) LIMITED, NYGARD INC., FASHION
VENTURES, INC., NYGARD NY RETAIL, LLC, NYGARD ENTERPRISES
LTD., NYGARD PROPERTIES LTD., 4093879 CANADA LTD., 4093887
CANADA LTD., and NYGARD INTERNATIONAL PARTNERSHIP.

Respondents



---

**RECEIVERSHIP ORDER**

---

| | |
|---|---|
| **OSLER, HOSKIN & HARCOURT LLP** | **PITBLADO LLP** |
| Barristers and Solicitors | 2500-360 Main St. |
| P.O. Box 50, 100 King Street West | Winnipeg MB  R3C 4H6 |
| 1 First Canadian Place | |
| Toronto, ON  M5X 1B8 | **Catherine Howden** |
| | Tel:  204.956.3532 |
| **Marc Wasserman** | Email:  howden@pitblado.com |
| Tel:  416.862.4908 | |
| Email:  mwasserman@osler.com | **Eric Blouw** |
| | Tel:  204.956.3512 |
| **Jeremy Dacks** | Email:  blouw@pitblado.com |
| Tel: 416.862.4923 | |
| Email: jdacks@osler.com | |

LEGAL_1:59238459.16

File No. CI 20-01-26627

THE QUEEN'S BENCH
**Winnipeg Centre**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | WEDNESDAY, THE 18TH |
| JUSTICE J.G. EDMOND | ) | DAY OF MARCH, 2020 |

IN THE MATTER OF: THE APPOINTMENT OF A RECEIVER PURSUANT TO SECTION 243 OF THE *BANKRUPTCY AND INSOLVENCY ACT*, R.S.C., C. B-3, AS AMENDED, AND SECTION 55 OF *THE COURT OF QUEEN'S BENCH ACT*, C.C.S.M., C. C280, AS AMENDED

BETWEEN:

WHITE OAK COMMERCIAL FINANCE, LLC

Applicant

- and -

NYGÅRD HOLDINGS (USA) LIMITED, NYGARD INC., FASHION VENTURES, INC., NYGARD NY RETAIL, LLC, NYGARD ENTERPRISES LTD, NYGARD PROPERTIES LTD., 4093879 CANADA LTD., 4093887 CANADA LTD., and NYGARD INTERNATIONAL PARTNERSHIP.

Respondents

CERTIFIED COPY
of
**RECEIVERSHIP ORDER**

THIS APPLICATION made by the Applicant for an Order pursuant to section 243(1) of the *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3, as amended (the "**BIA**") and section 55 *of The Court of Queen's Bench Act*, C.C.S.M. c. C280 (the "**QBA**") appointing Richter Advisory Group Inc. as receiver ("**Richter**" or, in such capacity, the "**Receiver**") without security, of all of the assets, undertakings and properties of Nygård Holdings (USA) Limited, Nygard Inc., Fashion Ventures, Inc., Nygard NY Retail, LLC, 4093879 Canada Ltd., 4093887 Canada Ltd., Nygard International Partnership, Nygard Properties Ltd. and Nygard Enterprises Ltd. (collectively and any of them, the "**Debtors**")

Original Court Copy

- 2 -

acquired for, or used in relation to a business carried on by, the Debtors, was heard this day at the Law Courts Building, 408 York Avenue, Winnipeg, Manitoba.

ON READING the Affidavit of Robert L. Dean affirmed March 9, 2020 (the "**Dean Affidavit**"), the Affidavit of Debbie Mackie affirmed March 10, 2020, the Affidavit of Greg Fenske affirmed March 11, 2020, the Affidavit of Jami Jacyk affirmed March 12, 2020, the Affidavit of Chantale DeBlois affirmed March 12, 2020, the Affidavit of Robert L. Dean affirmed March 17, 2020, the Affidavit of Laura Leigh Buley sworn March 17, 2020, the Affidavit of Greg Fenske affirmed March 18, 2020 and the "Confidential" Affidavit of Greg Fenske affirmed March 18, 2020 and on hearing the submissions of counsel for the Applicant, counsel for the Debtors, counsel for the Receiver, counsel for the Proposal Trustee, and no one else appearing although duly served as appears from the Affidavit of Service of Chantale DeBlois sworn March 9, 2020, filed herein, and on reading the consent of Richter to act as Receiver·

**SERVICE**

1.    THIS COURT ORDERS that the time for service of the Notice of Application is hereby abridged and validated so that this application is properly returnable today and hereby dispenses with further service thereof.

**APPOINTMENT**

2.    THIS COURT ORDERS that pursuant to section 243(1) of the BIA and section 55 of the QBA, Richter is hereby appointed Receiver, without security, of all of the assets, undertakings and properties of the Debtors acquired for, or used in relation to a business carried on by the Debtors (the "**Business**"), including all proceeds thereof (the "**Property**").

3.    THIS COURT ORDERS that, subject to further Order of this Court, and subject to the exercise of overriding powers pursuant to paragraph 6 hereof, the Debtors shall remain in possession and control of the Property, and the Receiver shall not be or be deemed to be in possession and control of the Property save and except as specifically provided for herein or pursuant to steps actually taken by the Receiver with respect to the Property under the permissive powers granted to the Receiver pursuant to paragraph 6 of this Order.

Original Court Copy

4.    THIS COURT ORDERS that:

    (a)    subject to paragraph 6(d) hereof, the Debtors' central cash management system and other accounts, as described in paragraphs 59 through 66 of the Dean Affidavit (the "**Cash Management System**") shall continue to be utilized at the direction of the Receiver on behalf of the Debtors (without any liability in respect thereof) and any bank or institution (each, a "Bank") providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Receiver on behalf of the Debtors (without any liability in respect thereof and as authorized by this Order) or the Receiver of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, and shall be entitled to provide the Cash Management System without any liability in respect thereof to any person other than the Receiver on behalf of the Debtors (without any liability in respect thereof and as authorized by this Order) or the Receiver, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unstayed and unaffected creditor with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System; and

    (b)    changes to the Cash Management System or to the operation of any Bank account thereunder shall be made only at the direction of and upon instruction from the Receiver and, for greater certainty, a Bank shall not accept or act upon the direction or instruction of the Debtors in relation thereto.

**RECEIVER'S POWERS**

5.    THIS COURT ORDERS that the Receiver is hereby authorized and directed to:

    (a)    remit to the Debtors from Receiver's borrowings such funding as the Receiver may from time to time approve for the purposes of the Business

2376273\1\7856.370

Original Court Copy

- 4 -

in accordance with the provisions of the Receiver Term Sheet attached as Appendix "B" to this Receivership Order;

(b) market and pursue all offers for sales of the Business or Property, in whole or in part, which may include: (i) advertising and soliciting offers in respect of the Property, the Business or any part or parts thereof and negotiating such terms and conditions of sale as the Receiver in its discretion may deem appropriate; (ii) soliciting proposals from third party liquidators; and (iii) engaging a real estate broker with respect to the sale of the Debtors' real property, subject to prior approval of this Court being obtained before any sale (except as permitted by paragraph 6(m)(i) below; and

(c) remit to the Lenders (as defined in the Dean Affidavit), on behalf of the Debtors (without any liability in respect thereof), any and all proceeds from Property in repayment of amounts outstanding in respect of the Credit Agreement (as defined in the Dean Affidavit).

**RECEIVER'S PERMISSIVE POWERS**

6.     THIS COURT ORDERS that the Receiver is hereby empowered and authorized, but not obligated, subject at all times to paragraph 5 above, to act at once in respect of the Property and, without in any way limiting the generality of the foregoing, the Receiver is hereby expressly empowered and authorized to do any of the following where the Receiver considers it necessary or desirable (provided that any disbursements made in connection with this paragraph 6 are made in accordance with the terms of this Receivership Order and the Receiver Term Sheet):

(a) to take possession of and exercise control over the Property;

(b) to receive, preserve, protect and maintain control of the Property, or any part or parts thereof, including, but not limited to, the changing of locks and security codes, the relocating of Property to safeguard it, the engaging of independent security personnel, the taking of physical inventories and the placement of such insurance coverage as may be necessary or desirable;

(c) to manage, operate, and carry on the business of the Debtors, including the powers to enter into any agreements (including any amendments and

2376273\1\7856.370

Original Court Copy

- 5 -

modifications thereto), incur any obligations in the ordinary course of business, cease to carry on all or any part of the business, or cease to perform any contracts of the Debtors;

(d)    take control of any and all accounts of the Debtors, including accounts with Banks, and take all required acts with any Bank to facilitate the control of such accounts, including changing signing authority on such accounts to such persons as the Receiver, it its sole discretion, deems appropriate, or, if deemed necessary by the Receiver, open one or more new accounts with any financial institution in the Receiver's Name ("**Receiver's Accounts**") and receive third party funds into the Receiver's Accounts, transfer into the Receiver's Accounts such funds of the Debtors as the Receiver, in its sole discretion, deems necessary or appropriate to assist with the exercise of the Receiver's powers and duties set out herein, or to make payments on behalf of the Debtors as the Receiver, in its sole discretion, deems necessary or appropriate; provided, however, that (i) in each case such action shall be without any liability of the Receiver in respect thereof; and (ii) the monies standing to the credit of the Receiver's Accounts from time to time shall be held by the Receiver to be dealt with as permitted by this Order or any other Orders of this Court;

(e)    to engage consultants, contractors, appraisers, agents, experts, auditors, accountants, managers, assistants, counsel and such other persons from time to time and on whatever basis, including on a temporary basis, to assist with the exercise of the Receiver's powers and duties, including without limitation those conferred by this Order;

(f)    to purchase or lease such machinery, equipment, inventories, supplies, premises or other assets to continue the business of the Debtors or any part or parts thereof;

(g)    to consult with the Applicant from time to time and to provide such information to the Applicant as may be reasonably requested by the Applicant;

Original Court Copy

- 6 -

(h)    to exercise all remedies available to the Debtors for the collection of monies including, without limitation, to enforce any security held by the Debtors;

(i)    to remit to the Debtors funding from the Receiver's borrowings to continue to operate the Business in accordance with the Receiver Term Sheet;

(j)    to settle, extend or compromise any indebtedness owing to or by the Debtors;

(k)    to execute, assign, issue and endorse documents of whatever nature in respect of any of the Property or the Business, whether in the Receiver's name or in the name and on behalf of the Debtors, for any purpose pursuant to this Order or otherwise authorized by the Court;

(l)    to initiate, prosecute and continue the prosecution of any and all proceedings and to defend all proceedings now pending or hereafter instituted with respect to the Debtors, the Property or the Receiver, and to settle or compromise any such proceedings. The authority hereby conveyed shall extend to such appeals or applications for judicial review in respect of any order or judgment pronounced in any such proceeding;

(m)    to sell, convey, transfer, lease or assign the Property or any part or parts thereof out of the ordinary course of business,

    (i)    without the approval of this Court in respect of any transaction not exceeding $250,000, provided that the aggregate consideration for all such transactions does not exceed $1,000,000; and

    (ii)    with the approval of this Court in respect of any transaction in which the purchase price or the aggregate purchase price exceeds the applicable amount set out in the preceding clause;

and in each such case notice under subsection 59(10) of *The Personal Property Security Act* (Manitoba), subsection 134(1) of *The Real Property Act* (Manitoba) or any similar federal or provincial legislation shall not be required;

Original Court Copy

- 7 -

(n)    to apply for any vesting order or other orders necessary to convey the Property or any part or parts thereof to a purchaser or purchasers thereof, free and clear of any liens or encumbrances affecting such Property;

(o)    to report to, meet with and discuss with such affected Persons (as defined below) as the Receiver deems appropriate on all matters relating to the Property and the receivership, and to share information, subject to such terms as to confidentiality as the Receiver deems advisable;

(p)    to register a copy of this Order and any other Orders in respect of the Property against title to any of the Property;

(q)    to apply for any permits, licences, approvals or permissions as may be required by any governmental authority and any renewals thereof for and on behalf of and, if thought desirable by the Receiver, in the name of the Debtors;

(r)    to enter into agreements with any trustee in bankruptcy appointed in respect of the Debtors, including, without limiting the generality of the foregoing, the ability to enter into occupation agreements for any property owned or leased by the Debtors;

(s)    to exercise any shareholder, partnership, joint venture or other rights which the Debtors may have;

(t)    to serve as a "foreign representative" of the Debtors in any proceeding outside of Canada; and

(u)    to take any steps reasonably incidental to the exercise of these powers or the performance of any statutory obligations.

and in each case where the Receiver takes any such actions or steps, it shall be exclusively authorized and empowered to do so, to the exclusion of all other Persons (as defined below), including the Debtors, and without interference from any other Person.

23762273\17856.370

Original Court Copy

- 8 -

## DUTY TO PROVIDE ACCESS AND CO-OPERATION TO THE RECEIVER

7.     THIS COURT ORDERS that the Debtors, all of their current and former directors, officers, employees, agents, advisors, accountants, legal counsel and shareholders, and all other persons acting on their instructions or behalf, and all other individuals, firms, corporations, governmental bodies or agencies, or other entities having notice of this Order (all of the foregoing, collectively, being "**Persons**" and each being a "**Person**") shall forthwith advise the Receiver of the existence of any Property in such Person's possession or control, shall grant immediate and continued access to the Property to the Receiver, and shall deliver all such Property to the Receiver upon the Receiver's request.

8.     THIS COURT ORDERS that all Persons shall forthwith advise the Receiver of the existence of any books, documents, securities, contracts, orders, corporate and accounting records, and any other papers, records and information of any kind related to the business or affairs of the Debtors, including the Cash Management System, and any computer programs, computer tapes, computer disks, or other data storage media containing any such information (the foregoing, collectively, the "**Records**") in that Person's possession or control, and shall provide to the Receiver or permit the Receiver to make, retain and take away copies thereof and grant to the Receiver unfettered access to and use of accounting, computer, software and physical facilities relating thereto, provided however that nothing in this paragraph 8 or in paragraph 9 of this Order shall require the delivery of Records, or the granting of access to Records, which may not be disclosed or provided to the Receiver due to the privilege attaching to solicitor-client communication or due to statutory provisions prohibiting such disclosure.

9.     THIS COURT ORDERS that if any Records are stored or otherwise contained on a computer or other electronic system of information storage, whether by independent service provider or otherwise, all Persons in possession or control of such Records shall forthwith give unfettered access to the Receiver for the purpose of allowing the Receiver to recover and fully copy all of the information contained therein whether by way of printing the information onto paper or making copies of computer disks or such other manner of retrieving and copying the information as the Receiver in its discretion deems expedient, and shall not alter, erase or destroy any Records without the prior written consent of the Receiver. Further, for the purposes of this paragraph, all Persons shall forthwith provide the Receiver with all such assistance in gaining immediate access to the

Original Court Copy

- 9 -

information in the Records as the Receiver may in its discretion require, including providing the Receiver with instructions on the use of any computer or other system and providing the Receiver with any and all access codes, account names and account numbers that may be required to gain access to the information.

10.     THIS COURT ORDERS that the Receiver shall provide each of the relevant landlords with notice of the Receiver's intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal.  The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes the Receiver's entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors, such landlord and the Receiver, or by further Order of this Court upon application by the Receiver on at least two (2) days' notice to such landlord and any such secured creditors.

**NO PROCEEDINGS AGAINST THE RECEIVER**

11.     THIS COURT ORDERS that no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**"), shall be commenced or continued against the Receiver except with the written consent of the Receiver or with leave of this Court.

**NO PROCEEDINGS AGAINST THE DEBTORS OR THE PROPERTY**

12.     THIS COURT ORDERS that no Proceeding against or in respect of the Debtors or the Property (including for greater certainty, any Property located on third-party premises) or any assets located on premises belonging to or leased by the Debtors shall be commenced or continued except with the written consent of the Receiver or with leave of this Court and any and all Proceedings currently under way against or in respect of the Debtors or the Property or any assets located on premises belonging to or leased by the Debtors are hereby stayed and suspended pending further Order of this Court provided; however, that nothing in this Order shall affect a Regulatory Body's investigation in respect of the Debtors or an action, suit or proceeding that is taken in respect of one or more of the Debtors by or before the Regulatory Body, other than the enforcement of a payment order by the Regulatory Body of the Court.  "**Regulatory Body**" means a person or body that has powers, duties or functions relating to the enforcement or administration of an Act of Parliament or of the legislature of a province.

23762731\17850.370

Original Court Copy

13.     THIS COURT ORDERS that notwithstanding paragraph 12 of this Order, nothing contained in this Order shall prevent or stay the continuation of the proceeding of *Jane Does Nos. 1-10 v. Nygard et al.*, No. 20-cv-01288 (ER) against certain Debtors in the United States District Court for the Southern District of New York (the "**Jane Doe Proceeding**") through and including the entry of final judgment therein, provided that this Order shall prevent and stay in all respects the enforcement of any judgment therein against any of the Debtors. For the avoidance of doubt, (i) the Receiver shall be under no obligation whatsoever to take any actions or steps with respect to the Jane Doe Proceeding, including but not limited to defending against such proceeding, and (ii) the Receiver shall have no liability whatsoever in respect of the Jane Doe Proceeding.

**NO EXERCISE OF RIGHTS OR REMEDIES**

14.     THIS COURT ORDERS that all rights and remedies against the Debtors, the Receiver, or affecting the Property (for certainty, including any rights and remedies of the plaintiffs as judgment creditors in the Jane Doe Proceeding, if applicable), are hereby stayed and suspended except with the written consent of the Receiver or leave of this Court, provided however that this stay and suspension does not apply in respect of any "eligible financial contract" as defined in the BIA, and further provided that nothing in this paragraph shall (i) empower the Receiver or the Debtors to carry on any business which the Debtors is not lawfully entitled to carry on, (ii) exempt the Receiver or the Debtors from compliance with statutory or regulatory provisions relating to health, safety or the environment, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien, provided that no further steps shall be taken.

**NO INTERFERENCE WITH THE RECEIVER**

15.     THIS COURT ORDERS that no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Debtors, without written consent of the Receiver or leave of this Court.

**CONTINUATION OF SERVICES**

16.     THIS COURT ORDERS that all Persons having oral or written agreements with the Debtors or statutory or regulatory mandates for the supply of goods and/or services,

Original Court Copy

- 11 -

including without limitation, all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation services, utility or other services to the Debtors are hereby restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Receiver, and that the Receiver shall be entitled to the continued use of the applicable Debtor's current telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Receiver in accordance with normal payment practices of the Debtors or such other practices as may be agreed upon by the supplier or service provider and the Receiver, or as may be ordered by this Court.

## EMPLOYEES

17.     THIS COURT ORDERS that all employees of the Debtors shall remain the employees of the applicable Debtor(s) until such time as the Receiver, on the Debtors' behalf, may terminate the employment of such employees. The Receiver shall not be liable for any employee-related liabilities, including any successor employer liabilities as provided for in section 14.06(1.2) of the BIA, other than such amounts as the Receiver may specifically agree in writing to pay, or in respect of its obligations under sections 81.4(5) or 81.6(3) of the BIA or under the *Wage Earner Protection Program Act*.

## PIPEDA

18.     THIS COURT ORDERS that pursuant to clause 7(3)(c) of the Canada *Personal Information Protection and Electronic Documents Act*, the Receiver shall disclose personal information of identifiable individuals to prospective purchasers or bidders for the Property and to their advisors, but only to the extent desirable or required to negotiate and attempt to complete one or more sales of the Property (each, a "**Sale**"). Each prospective purchaser or bidder to whom such personal information is disclosed shall maintain and protect the privacy of such information and limit the use of such information to its evaluation of the Sale, and if it does not complete a Sale, shall return all such information to the Receiver, or in the alternative destroy all such information. The purchaser of any Property shall be entitled to continue to use the personal information provided to it, and related to the Property purchased, in a manner which is in all material respects identical to

2376273\1\17856.370

Original Court Copy

- 12 -

the prior use of such information by the Debtors, and shall return all other personal information to the Receiver, or ensure that all other personal information is destroyed.

## LIMITATION ON ENVIRONMENTAL LIABILITIES

19.     THIS COURT ORDERS that in addition to paragraph 6 hereof, nothing herein contained shall require the Receiver to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act, The Environment Act (Manitoba), The Water Resources Conservation Act (Manitoba), The Contaminated Sites Remediation Act (Manitoba), The Dangerous Goods Handling and Transportation Act (Manitoba), The Public Health Act (Manitoba) or The Workplace Safety and Health Act (Manitoba)* or any similar federal or provincial legislation and regulations thereunder (the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Receiver from any duty to report or make disclosure imposed by applicable Environmental Legislation. The Receiver shall not, as a result of this Order or anything done in pursuance of the Receiver's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

## LIMITATION ON THE RECEIVER'S LIABILITY

20.     THIS COURT ORDERS that the Receiver shall incur no liability or obligation as a result of its appointment or the carrying out the provisions of this Order, including, for greater certainty, if applicable, in the Receiver's capacity as "foreign representative", save and except for any gross negligence or wilful misconduct on its part, or in respect of its obligations under sections 81.4(5) or 81.6(3) of the BIA or under the *Wage Earner Protection Program Act*. Nothing in this Order shall derogate from the protections afforded the Receiver by section 14.06 of the BIA or by any other applicable legislation.

Original Court Copy

- 13 -

## RECEIVER'S ACCOUNTS

21.　THIS COURT ORDERS that the Receiver and counsel to the Receiver shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges unless otherwise ordered by the Court on the passing of accounts, and that the Receiver and counsel to the Receiver shall be entitled to and are hereby granted a charge (the "**Receiver's Charge**") on the Property, as security for such fees and disbursements, both before and after the making of this Order in respect of these proceedings, and that the Receiver's Charge shall form a first charge on the Property in priority to all security interests, trusts, liens, charges and encumbrances, statutory or otherwise (each, an "**Encumbrance**"), in favour of any Person, except for any Encumbrance in favour of a secured creditor who would be materially affected by this Order and who was not given notice of this application, and subject to sections 14.06(7), 81.4(4), and 81.6(2) of the BIA.

22.　THIS COURT ORDERS that the Receiver and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Receiver and its legal counsel are hereby referred to a judge of this Court, but nothing herein shall fetter this Court's discretion to refer such matters to a Master of this Court.

23.　THIS COURT ORDERS that prior to the passing of its accounts, the Receiver shall be at liberty from time to time to apply reasonable amounts, out of the monies in its hands, against its fees and disbursements, including legal fees and disbursements and applicable taxes, incurred at the standard rates and charges of the Receiver or its counsel, and such amounts shall constitute advances against its remuneration and disbursements when and as approved by this Court.

## FUNDING OF THE RECEIVERSHIP

24.　THIS COURT ORDERS that the Receiver is at liberty and is hereby empowered to borrow from the Applicant, pursuant to and in accordance with the terms of the Receiver Term Sheet and the budget (the "**Budget**") contemplated therein, such monies from time to time as it may consider necessary or desirable for the purpose of funding the exercise of the powers and duties conferred upon the Receiver by this Order, including, without limitation, payment of expenses contemplated in the Budget by the Receiver on behalf of the Debtors (without any liability in respect thereof and as authorized by this Order) or the Receiver, subject to the terms of the Receiver Term Sheet (including the Budget). The

Original Court Copy

- 14 -

whole of the Property shall be and is hereby charged by way of a fixed and specific charge (the "**Receiver's Borrowings Charge**") as security for the payment of the monies borrowed, together with interest and charges thereon, in priority to all Encumbrances in favour of any Person, but subordinate in priority to (i) any Encumbrance in favour of a secured creditor who would be materially affected by this Order and who was not given notice of this application, (ii) the Receiver's Charge, and (iii) the charges as set out in sections 14.06(7), 81.4(4), and 81.6(2) of the BIA.

25.     THIS COURT ORDERS that neither the Receiver's Borrowings Charge nor any other security granted by the Receiver in connection with its borrowings under this Order shall be enforced without leave of this Court.

26.     THIS COURT ORDERS that the Receiver is at liberty and authorized to issue certificates substantially in the form annexed as Schedule "A" hereto (the "**Receiver's Certificates**") for any amount borrowed by it pursuant to this Order.

27.     THIS COURT ORDERS that the monies from time to time borrowed by the Receiver pursuant to this Order or any further order of this Court and any and all Receiver's Certificates evidencing the same or any part thereof shall rank on a *pari passu* basis, unless otherwise agreed to by the holders of any prior issued Receiver's Certificates.

28.     THIS COURT ORDERS that notwithstanding any other provision of this Order, but subject to the terms of the Receiver Term Sheet, the lenders thereunder may cease making advances and the facility provided for under the Receiver Term Sheet shall be deemed to have expired.

**SERVICE AND NOTICE**

29.     THIS COURT ORDERS that the Applicant and the Receiver be at liberty to serve this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic transmission to the Debtors' creditors or other interested parties at their respective addresses as last shown on the records of the Debtors and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

Original Court Copy

- 15 -

30.     THIS COURT ORDERS that counsel for the Receiver shall prepare and keep a current list ("**Service List**") containing the name and contact information (which may include the address, telephone number and facsimile number or e-mail address) for service to: the Applicant, the Receiver; and each creditor or other interested party who has sent a request in writing, to counsel for the Receiver to be added to the Service List. The Service List shall indicate whether each person on the Service List has elected to be served by e-mail or facsimile, and failing such election the Service List shall indicate service by e-mail. The Service List shall be posted on the website of the Receiver at the address indicated in paragraph 31 herein. For greater certainty, creditors and other interested persons who have received notice of this Order and who do not send in a request, in writing, to counsel for the Receiver to be added to the Service List shall not be required to be further served in this proceeding. Service shall be deemed valid and sufficient if completed in the manner elected.

31.     THIS COURT ORDERS that the Applicant, the Receiver, and all parties on the Service List may serve any court materials in these proceedings by e-mailing a PDF or other electronic copy of such materials to counsels' e-mail addresses as recorded on the Service List from time to time, which service shall be deemed valid and sufficient, and the Receiver shall post a copy of any and all such materials on its website at: https://www.richter.ca/insolvencycase/nygard-group.

**GENERAL**

32.     THIS COURT ORDERS that the Receiver may from time to time apply to this Court for advice and directions in the discharge of its powers and duties hereunder.

33.     THIS COURT ORDERS that nothing in this Order shall prevent the Receiver from acting as a trustee in bankruptcy of the Debtors.

34.     THIS COURT ORDERS that this Court hereby requests the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States to give effect to this Order and to assist the Receiver and its agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Receiver, as an officer of this Court, as may be necessary or desirable

Original Court Copy

- 16 -

to give effect to this Order, to grant representative status to the Receiver in any foreign proceeding, or to assist the Receiver and its agents in carrying out the terms of this Order.

35.    THIS COURT ORDERS that the Receiver is hereby directed, as "foreign representative" of the Debtors, to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the *United States Bankruptcy Code*, 11 U.S.C. 101-1330, as amended.

36.    THIS COURT ORDERS that the Receiver shall be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order, and that the Receiver is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada.

37.    THIS COURT ORDERS that the Applicant shall have its costs of this Application, up to and including entry and service of this Order, provided for by the terms of the Applicant's security or, if not so provided by the Applicant's security, then on a solicitor client basis to be paid by the Receiver from the Debtors' estate with such priority and at such time as this Court may determine.

38.    THIS COURT ORDERS that any interested party may apply to this Court to vary or amend this Order on not less than seven (7) days' notice to the Receiver and to any other party likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

CERTIFIED A TRUE COPY

March 18, 2020

DEPUTY REGISTRAR

J.G. Edmond, J.

Digitally signed by
J.G. Edmond, J.
Date: 2020.03.18
15:55:32 -05'00'

EDMOND J.

I, JEREMY DACKS, OF THE FIRM OF OSLER, HOSKIN & HARCOURT LLP, HEREBY CERTIFY THAT I HAVE RECEIVED THE CONSENTS AS TO FORM OF THE FOLLOWING PARTIES:

AS DIRECTED BY THE HONOURABLE JUSTICE J.G. EDMOND

2376273\1\7856.370

Original Court Copy

## SCHEDULE "A"
## RECEIVER CERTIFICATE

CERTIFICATE NO. _____

AMOUNT $ _____

1.      THIS IS TO CERTIFY that Richter Advisory Group Inc., the receiver (the
"**Receiver**") of the assets, undertakings and properties of Nygård Holdings (USA) Limited,
Nygård Inc., Fashion Ventures, Inc., Nygård NY Retail, LLC, 4093879 Canada Ltd.,
4093887 Canada Ltd., Nygård International Partnership, Nygård Properties Ltd., and
Nygård Enterprises Ltd. (collectively, the "**Debtors**") acquired for, or used in relation to a
business carried on by the Debtors, including all proceeds thereof (collectively, the
"**Property**") appointed by Order of the Court of Queen's Bench of Manitoba (the "**Court**")
dated the ____ day of _____, 2020 (the "**Order**") made in an action having Court file
number CI-_____, has received as such Receiver from the holder of this certificate
(the "**Lender**") the principal sum of $_____, being part of the total principal sum of
$_____ which the Receiver is authorized to borrow under and pursuant to the
Order.

2.      The principal sum evidenced by this certificate is payable on demand by the
Lender with interest thereon calculated in accordance with Receiver Term Sheet attached
as Appendix "B" to the Receivership Order made March 18, 2020.

3.      Such principal sum with interest thereon is, by the terms of the Order, together
with the principal sums and interest thereon of all other certificates issued by the Receiver
pursuant to the Order or to any further order of the Court, a charge upon the whole of the
Property, in priority to the security interests of any other person, but subject to the priority
of the charges set out in the Order and in the *Bankruptcy and Insolvency Act*, and the right
of the Receiver to indemnify itself out of such Property in respect of its remuneration and
expenses.

4.      All sums payable in respect of principal and interest under this certificate are
payable in accordance with the Receiver Term Sheet.

5.      Until all liability in respect of this certificate has been terminated, no certificates
creating charges ranking or purporting to rank in priority to this certificate shall be issued

Original Court Copy

- 2 -

by the Receiver to any person other than the holder of this certificate without the prior written consent of the holder of this certificate.

6.    The charge securing this certificate shall operate so as to permit the Receiver to deal with the Property as authorized by the Order and as authorized by any further or other order of the Court.

7.    The Receiver does not undertake, and it is not under any personal or corporate liability, to pay any sum in respect of which it may issue certificates under the terms of the Order.

DATED the _____ day of _____, 2020.

<div style="margin-left:40%">

**RICHTER ADVISORY GROUP INC.**, solely in its capacity as Receiver of the assets, undertakings and properties of **NYGÅRD HOLDINGS (USA) LIMITED, NYGARD INC., FASHION VENTURES, INC., NYGARD NY RETAIL, LLC, NYGARD ENTERPRISES LTD, NYGARD PROPERTIES LTD., 4093879 CANADA LTD., 4093887 CANADA LTD., and NYGARD INTERNATIONAL PARTNERSHIP** and not in its personal or corporate capacity

Per: _____

　　　Name:

　　　Title:

</div>

237677517866 372
LEGAL_1:59238459.16

Original Court Copy

## SCHEDULE "B"
## RECEIVER TERM SHEET

LEGAL_I:59238459.16

Original Court Copy

## TERM SHEET

### Dated as of March 10, 2020

WHEREAS White Oak Commercial Finance, LLC, in its capacity as administrative and collateral agent (the "**Agent**") under the Credit Agreement dated as of December 30, 2019 (the "**Credit Agreement**"), by and among the Debtors (as defined below), the Agent and White Oak Commercial Finance, LLC and Second Avenue Capital Partners, LLC as lenders (the "**Lenders**"), has sought the appointment of Richter Advisory Group Inc. ("**Richter**") as receiver (the "**Receiver**") of the assets, undertakings and properties (the "**Property**") of Nygård Holdings (USA) Limited, Nygård Inc., Fashion Ventures, Inc., Nygård NY Retail, LLC, 4093879 Canada Ltd., 4093887 Canada Ltd., Nygård International Partnership, Nygård Properties Ltd., and Nygård Enterprises Ltd. (collectively, the "**Debtors**") pursuant to section 243 of the *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3, as amended, and section 55 of *The Court of Queen's Bench Act*, C.C.S.M., c. C280, as amended;

AND WHEREAS the Receiver is to be appointed by Order of the Court of Queen's Bench (Winnipeg Centre) (the "**Court**") pursuant to a hearing scheduled on March 10, 2020 (as may be modified, amended or supplemented with consent of the Agent and the Receiver, the "**Receivership Order**");

AND WHEREAS, in either case, the Receiver will incur certain costs and obligations in relation to its appointment as Receiver of the Debtors;

AND WHEREAS the Lenders have agreed to fund such costs and obligations of the Receiver in accordance with the terms set out herein (such funding facility, the "**Facility**");

NOW THEREFORE, in consideration of the mutual agreements herein contained, the parties hereto agree as follows:

| | |
|---|---|
| 1. PURPOSE OF FACILITY: | To fund the costs of (i) the exercise of the powers and duties conferred upon the Receiver by the Receivership Order; (ii) the Receiver's assessment of realization strategies for the Property and the implementation of same; and (iii) the fees and disbursements of the Receiver and its legal counsel in connection with the forgoing; all in accordance with the terms of a wind-down budget to be agreed upon by the Agent and the Receiver in writing (as may be subsequently amended, modified or supplemented from time to time on agreement of the Agent and the Receiver, the "**Budget**"). |
| 2. AVAILABILITY: | Promptly following the granting of the Receivership Order, the Lenders will make initial advance(s) of the Facility to the Receiver in the aggregate amount of CDN$4,938,000 (the "**Initial Advances**"). Thereafter, the Facility may be drawn down by the Receiver in accordance with the Budget and the terms hereof, unless otherwise agreed. CDN$240,000 shall be held back by the Lenders and shall constitute an Initial Advance, the purpose of which will be to fund the costs of the Agent's legal counsel in connection with the |

Original Court Copy

- 2 -

receivership proceedings.

3. INTEREST:

Interest shall accrue from the date of the first Initial Advance on the outstanding balance of any Initial Advance and any advance thereafter (each, an "**Advance**") (collectively, the "**Obligations**") at the Default Rate (as defined in the Credit Agreement) of interest, which shall be computed on the same terms set forth in the Credit Agreement.

4. REPAYMENT:

The Obligations (including interest thereon) shall be repaid to the Lenders upon the realization of proceeds from the sale of any Property, in accordance with the Receivership Order or any subsequent order of the Court, including, for the avoidance of doubt, sales in the ordinary course of business.

For greater certainty, Richter in its personal or corporate capacity will not have any liability to repay the Obligations (including interest thereon).

5. ADVANCES

Following the first Initial Advance, the Facility may be drawn down by the Receiver in weekly Advances to cover anticipated costs and expenses of the Receivership in accordance with the Budget. The Receiver shall be entitled to submit a weekly written request (an "**Advance Request**") for an Advance. Such Advances are to be made in accordance with the Budget, unless otherwise agreed.

Upon receipt of an Advance Request, the Lenders will provide the requested Advance to the Receiver by wire transfer to an account stipulated by the Receiver by the end of the business day that is one business day following the day on which the Advance Request is received by the Agent.

6. REPORTING

The Receiver shall provide the Agent with weekly borrowing base reporting, which shall include reporting with respect to, among other things: (i) accounts receivable and collections; (ii) inventory sales and holdings; (iii) weekly cash receipts and disbursements projections; (iv) variance reporting comparing actual receipts and disbursements for the preceding week to the Budget and the projection contemplated in subsection (iii) of this paragraph; (iv) the status of the liquidation contemplated in the Sale Approval Order provided for in Section 8 of this Term Sheet; and (v) such other information regarding the operations, business, affairs and financial conditions of the Debtors as the Agent may reasonably request. Notwithstanding the foregoing, nothing contained in Section 6 of this Term Sheet shall require the Receiver to acquire or implement any new reporting systems and the Receiver shall be entitled to utilize the Debtors' current reporting systems for the purposes of

Original Court Copy

- 3 -

reporting obligations under this Term Sheet.

7. TERM:    The Facility will be available to the Receiver for an initial two-week period ending March 24, 2020 (the "**Initial Term**"). If the Agent elects to provide additional funding, in its sole discretion, such additional funding is to be provided for a period of time to be agreed upon by the Agent and the Receiver (the "**Extended Term**") in accordance with a revised budget to be agreed upon between the Agent and the Receiver.

8. CONDITIONS PRECEDENT:    The Lenders will not be obliged to make any Advance (including any Initial Advance) under the Facility unless the following conditions precedent have been satisfied or waived:

1. The Receivership Order has been issued.

2. The Receiver has executed and returned a copy of this Term Sheet.

3. The Advance is in accordance with the Budget.

4. The Sale Approval Order, in the form attached as Exhibit "A" hereto, has been issued; provided, however, that such condition shall not apply with respect to the Initial Advance(s).

9. TERMINATION:    The Lenders shall be entitled, in their sole discretion, to notify the Receiver that they intend to cease to make further Initial Advances or Advances and to terminate their obligation to make Initial Advances or Advances under this Term Sheet; provided that in such case (i) the Receiver shall thereupon be entitled, but not obliged, to immediately apply to the Court to be fully discharged as receiver and manager of the Property, to which the Lenders will consent, and (ii) if the Receiver so applies to the Court to be fully discharged as receiver and manager of the Property, the Lenders shall continue to be obliged to make such Initial Advances or Advances to the Receiver as may be required to satisfy in full on a timely basis all payment and other obligations and liabilities of the Receiver incurred in the proper exercise of the Receiver's powers and until such time as the Receiver has been so discharged by the Court, provided that (A) in the case of an Initial Advance, such payment is contemplated in the cash flow forecast prepared by Richter dated March 9, 2020; and (B) in the case of an Advance, such Advance is expressly provided for in the Budget, in each case whether payment or liability in respect of such obligations is due or accrues due prior to or at the date of such discharge. Upon satisfaction of its

Original Court Copy

- 4 -

obligations described in (i), if applicable, and (ii), if applicable, of this paragraph, the Lender shall be under no further obligation to provide any Advance whatsoever.

10. RECEIVER OBLIGATIONS

Nothing in this Term Sheet or otherwise shall or shall be interpreted to require the Receiver to do any act or thing that would result in a breach or default by the Receiver of any duty or obligation of the Receiver as provided in or by the Receivership Order, any amendment thereof or further order, or any statute or otherwise at law.

11. GOVERNING LAW:

This Term Sheet shall be governed by, and construed in accordance with, the laws of the Province of Manitoba and the federal laws of Canada applicable therein.

12. SECURITY:

A court-ordered receiver's borrowing charge as provided for in the Receivership Order, in form and substance satisfactory to the Agent.

13. NOTICE:

Any notice or request required or permitted to be given in connection with this Term Sheet shall be in writing and shall be sufficiently given if delivered (whether in person, by courier service or other personal method of delivery, or, if transmitted, by email):

(a)     in the case of the Receiver at:

Richter Advisory Group Inc.
181 Bay Street, Suite #3510
Toronto, Ontario, Canada
M5J 2T3

Attention: Pritesh Patel
Email:     PPatel@Richter.ca

(b)     in the case of the Agent at:

White Oak Commercial Finance, LLC
1155 Avenue of the Americas, 15th Floor
New York, New York 10036
Attention: Glenn Schwartz
Telephone: 212-887-7943
Facsimile: 212-887-7988
Email: gschwartz@whiteoakcf.com

with a copy to:
Osler, Hoskin & Harcourt LLP
1 First Canadian Place
100 King Street West, Suite 6200
Toronto, ON M5X 1B8
Attention: Marc Wasserman

LEGAL_1:59530373.6

Original Court Copy

- 5 -

Telephone: (416) 862-4908
Facsimile: (416) 862-6666
Email: mwasserman@osler.com

and with a copy to:
Hahn & Hessen LLP
488 Madison Avenue, 14th Floor
New York, New York 10022
Attention: Jeanne Siegel
Telephone: (212) 478-7238
Facsimile: (212) 478-7400
Email: jsiegel@hahnhessen.com

*[Signature Page Follows]*

Original Court Copy

If the above terms and conditions contained herein are acceptable to the Receiver, please execute and return a copy of this Term Sheet.

WHITE OAK FINANCIAL, LLC

Per: _____

Name: Glenn Schwartz

Title: SVP

SECOND AVENUE CAPITAL PARTNERS, LLC

Per: _____
Name:
Title:


We acknowledge and accept the within terms and conditions as of the 10th day of March, 2020.

RICHTER ADVISORY GROUP INC., solely in its capacity as proposed court-appointed receiver of the assets, undertakings and properties of NYGÅRD HOLDINGS (USA) LIMITED, NYGÅRD INC., FASHION VENTURES, INC., NYGÅRD NY RETAIL, LLC, 4093879 CANADA LTD., 4093887 CANADA LTD., NYGÅRD INTERNATIONAL PARTNERSHIP, NYGÅRD PROPERTIES LTD., AND NYGÅRD ENTERPRISES LTD.

Per: _____
Name:
Title:

Original Court Copy

If the above terms and conditions contained herein are acceptable to the Receiver, please execute and return a copy of this Term Sheet.

WHITE OAK FINANCIAL, LLC

Per: _____
Name:
Title:

SECOND AVENUE CAPITAL PARTNERS, LLC

Per: _Christoph O'Conn_
Name: Christopher O'Connor
Title: President

We acknowledge and accept the within terms and conditions as of the 10th day of March, 2020.

RICHTER ADVISORY GROUP INC., solely in its capacity as proposed court-appointed receiver of the assets, undertakings and properties of NYGÅRD HOLDINGS (USA) LIMITED, NYGÅRD INC., FASHION VENTURES, INC., NYGÅRD NY RETAIL, LLC, 4093879 CANADA LTD., 4093887 CANADA LTD., NYGÅRD INTERNATIONAL PARTNERSHIP, NYGÅRD PROPERTIES LTD., AND NYGÅRD ENTERPRISES LTD.

Per: _____
Name:
Title:

Original Court Copy

If the above terms and conditions contained herein are acceptable to the Receiver, please execute and return a copy of this Term Sheet.

WHITE OAK FINANCIAL, LLC

Per: _____

Name:

Title:

SECOND AVENUE CAPITAL PARTNERS, LLC

Per: _____

Name:

Title:

We acknowledge and accept the within terms and conditions as of the 10th day of March, 2020.

RICHTER ADVISORY GROUP INC., solely in its capacity as proposed court-appointed receiver of the assets, undertakings and properties of **NYGÅRD HOLDINGS (USA) LIMITED, NYGÅRD INC., FASHION VENTURES, INC., NYGÅRD NY RETAIL, LLC, 4093879 CANADA LTD., 4093887 CANADA LTD., NYGÅRD INTERNATIONAL PARTNERSHIP, NYGÅRD PROPERTIES LTD., AND NYGÅRD ENTERPRISES LTD.**

Per: _____

Name: AKAM SHERMAN

Title: SENIOR VICE PRESIDENT

## SCHEDULE "A"

File No: CI ●

### THE QUEEN'S BENCH
### Winnipeg Centre

IN THE MATTER OF:   THE APPOINTMENT OF A RECEIVER PURSUANT TO SECTION 243 OF THE *BANKRUPTCY AND INSOLVENCY ACT*, R.S.C., C. B-3, AS AMENDED, AND SECTION 55 OF *THE COURT OF QUEEN'S BENCH ACT*, C.C.S.M., C. C280, AS AMENDED

BETWEEN:

### WHITE OAK COMMERCIAL FINANCE, LLC

Applicant

- and -

### NYGÅRD HOLDINGS (USA) LIMITED, NYGARD INC., FASHION VENTURES, INC., NYGARD NY RETAIL, LLC, NYGARD ENTERPRISES LTD., NYGARD PROPERTIES LTD., 4093879 CANADA LTD., 4093887 CANADA LTD., and NYGARD INTERNATIONAL PARTNERSHIP.

Respondents

### ORDER

(Sale Approval)

| | |
|---|---|
| **OSLER, HOSKIN & HARCOURT LLP**<br>Barristers and Solicitors<br>P.O. Box 50, 100 King Street West<br>1 First Canadian Place<br>Toronto, ON M5X 1B8<br><br>**Marc Wasserman**<br>Tel: 416.862.4908<br>Email: mwasserman@osler.com<br><br>**Jeremy Dacks**<br>Tel: 416.862.4923<br>Email: jdacks@osler.com | **PITBLADO LLP**<br>2500-360 Main St.<br>Winnipeg MB R3C 4H6<br><br>**Catherine Howden**<br>Tel: 204.956.3532<br>Email: howden@pitblado.com<br><br>**Eric Blouw**<br>Tel: 204.956.3512<br>Email: blouw@pitblado.com |

Original Court Copy

- 2 -

File No: CI ●

## THE QUEEN'S BENCH
### Winnipeg Centre

| THE HONOURABLE MR. | ) | ●, THE ● |
| | ) | |
| JUSTICE J.G. EDMOND | ) | DAY OF MARCH, 2020 |

IN THE MATTER OF:    THE APPOINTMENT OF A RECEIVER PURSUANT TO SECTION 243 OF THE *BANKRUPTCY AND INSOLVENCY ACT*, R.S.C., C. B-3, AS AMENDED, AND SECTION 55 OF *THE COURT OF QUEEN'S BENCH ACT*, C.C.S.M., C. C280, AS AMENDED

BETWEEN:

### WHITE OAK COMMERCIAL FINANCE, LLC

Applicant

- and -

### NYGÅRD HOLDINGS (USA) LIMITED, NYGARD INC., FASHION VENTURES, INC., NYGARD NY RETAIL, LLC, NYGARD ENTERPRISES LTD, NYGARD PROPERTIES LTD., 4093879 CANADA LTD., 4093887 CANADA LTD., and NYGARD INTERNATIONAL PARTNERSHIP.

Respondents

### SALE APPROVAL ORDER

THIS MOTION brought by Richter Advisory Group Inc., in its capacity as court-appointed receiver (in such capacity, the "**Receiver**") without security, of all of the assets, undertakings and properties of Nygård Holdings (USA) Limited, Nygard Inc., Fashion

Original Court Copy

- 3 -

Ventures, Inc., Nygard NY Retail, LLC, 4093879 Canada Ltd., 4093887 Canada Ltd., Nygard International Partnership, Nygard Properties Ltd. and Nygard Enterprises Ltd. (collectively and any of them, the **"Debtors"**) for an Order, among other things, approving the transactions contemplated under a consulting agreement between ● (the **"Consultant"**) and the Receiver dated as of March ●, 2020 (the **"Consulting Agreement"**) and certain related relief, was heard this day at the Law Courts Building, 408 York Avenue, Winnipeg, Manitoba.

ON READING the Notice of Motion of the Receiver, the first report of the Receiver dated March ●, 2020 and the Appendices thereto (the **"First Report"**) and the Brief of Law of the Receiver, and on hearing the submissions of counsel for the Receiver, counsel for the Applicant and counsel for the Debtors, no one else appearing although duly served as appears from the Affidavit of Service of ● sworn March ●, 2020, filed herein:

### SERVICE AND DEFINITIONS

1.      THIS COURT ORDERS that the time for service of the Notice of Motion and the Motion Record is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2.      THIS COURT ORDERS that any capitalized term used and not defined herein shall have the meaning ascribed thereto in the Sale Guidelines (as defined below) and the Consulting Agreement (attached as Exhibit "●" to the First Report), as applicable.

### THE CONSULTING AGREEMENT

3.      THIS COURT ORDERS that the Consulting Agreement, including the sale guidelines attached hereto as Schedule "A" (the **"Sale Guidelines"**), and the transactions contemplated thereunder are hereby approved, authorized and ratified and that the execution of the Consulting Agreement by the Receiver is hereby approved, authorized, and ratified with such minor amendments (to the Consulting Agreement, but not the Sale Guidelines) as the Receiver and the Consultant may agree to in writing. Subject to the provisions of this Order and the Receivership Order granted in these proceedings dated March 10, 2020 (the **"Receivership Order"**), the Receiver and the Consultant are hereby

Original Court Copy

- 4 -

authorized and directed to take any and all actions as may be necessary or desirable to implement the Consulting Agreement and each of the transactions contemplated therein. Without limiting the foregoing, the Receiver and the Consultant are authorized to execute any other agreement, contract, deed or any other document, or take any other action, which could be required or be useful to give full and complete effect to the Consulting Agreement.

**THE SALE**

4.        THIS COURT ORDERS that the Consultant, with the assistance of the Receiver, is authorized to conduct the Sale in accordance with this Order, the Consulting Agreement and the Sale Guidelines and to advertise and promote the Sale within the Stores in accordance with the Sale Guidelines. If there is a conflict between this Order, the Consulting Agreement and the Sale Guidelines, the order of priority of documents to resolve such conflicts is as follows: (1) this Order; (2) the Sale Guidelines; and (3) the Consulting Agreement.

5.        THIS COURT ORDERS that, subject to paragraph [**10**] of the Receivership Order, the Consultant, with the assistance of the Receiver, is authorized to market and sell the Merchandise and Nygard FF&E in accordance with the Sale Guidelines, free and clear of all liens, claims, encumbrances, security interests, mortgages, hypothecs, charges, trusts, deemed trusts, executions, levies, financial, monetary or other claims, whether or not such claims have attached or been perfected, registered or filed and whether secured, unsecured, quantified or unquantified, contingent or otherwise, whensoever and howsoever arising, and whether such claims arose or came into existence prior to the date of this Order or came into existence following the date of this Order, (in each case, whether contractual, statutory, arising by operation of law, in equity or otherwise) (all of the foregoing, collectively "**Claims**"), including, without limitation the Receiver's Charge and the Receiver's Borrowing Charge (as such terms are defined in the Receivership Order) and any other charges hereafter granted by this Court in these proceedings (collectively, the "**Charges**"), and all Claims, charges, security interests or liens evidenced by registrations pursuant to *The Personal Property Security Act* (Manitoba), *The Real Property Act of*

Original Court Copy

- 5 -

*Manitoba*, or any similar federal or provincial legislation (all of such Claims, charges (including the Charges), security interests and liens collectively referred to herein as **"Encumbrances"**), which Encumbrances will attach instead to the proceeds of the Sale (other than amounts specified in paragraph 14 of this Order) in the same order and priority as they existed immediately prior to such Sale.

6.      THIS COURT ORDERS that subject to the terms of this Order, the Receivership Order and the Sale Guidelines, or any greater restrictions in the Consulting Agreement or the Sale Guidelines, the Consultant shall have the right to enter and use the Stores and all related store services and all facilities and all furniture, trade fixtures and equipment, including the Nygard FF&E, located at the Stores, and other assets of the Debtors as designated under the Consulting Agreement, for the purpose of conducting the Sale and for such purposes, the Consultant shall be entitled to the benefit of the stay of proceedings provided under the Receivership Order, as such stay of proceedings may be extended by further Order of the Court.

7.      THIS COURT ORDERS that until the Sale Termination Date (as defined in the Consulting Agreement) for each Store (which shall in no event be later than ●, 2020), the Consultant shall have access to the Stores in accordance with the applicable Leases (as such term is defined in the Sale Guidelines) and the Sale Guidelines on the basis that the Consultant is assisting the Receiver and the Receiver has granted the right of access to the Store to the Consultant. To the extent that the terms of the applicable Leases are in conflict with any term of this Order or the Sale Guidelines, the terms of this Order and the Sale Guidelines shall govern.

8.      THIS COURT ORDERS that nothing in this Order shall amend or vary, or be deemed to amend or vary the terms of the Leases. Nothing contained in this Order or the Sale Guidelines shall be construed to create or impose upon the Receiver or the Consultant any additional restrictions not contained in the applicable Lease or other occupancy agreement.

9.      THIS COURT ORDERS that, subject to and in accordance with the Consulting Agreement, the Sale Guidelines and this Order, the Consultant is authorized to advertise

Original Court Copy

- 6 -

and promote the Sale, without further consent of any Person (as defined in the Receivership Order) other than the Receiver, as provided under the Consulting Agreement, or a Landlord (as defined in the Sale Guidelines), as provided under the Sale Guidelines.

10.      THIS COURT ORDERS that until the Sale Termination Date, the Consultant shall have the right to use, without interference by any intellectual property licensor, any of the Debtors' trade names, trademarks and logos relating to and used in connection with the operation of the Stores, as well as all licenses and rights granted to the Debtors' to use the trade names, trademarks, and logos of third parties, solely for the purpose of advertising and conducting the Sale in accordance with the terms of the Consulting Agreement, the Sale Guidelines, and this Order.

## CONSULTANT LIABILITY

11.      THIS COURT ORDERS that the Consultant shall act solely as an independent consultant to the Receiver and that it shall not be liable for any claims against the Receiver or the Debtors, other than as expressly provided in the Consulting Agreement (including the Consultant's indemnity obligations thereunder) or the Sale Guidelines and, for greater certainty:

(a)     the Consultant shall not be deemed to be an owner or in possession, care, control or management of the Stores, of the assets located therein or associated therewith or of the Debtors' employees located at the Stores or any other property of the Debtors;

(b)     the Consultant shall not be deemed to be an employer, or a joint or successor employer or a related or common employer or payor within the meaning of any legislation governing employment or labour standards or pension benefits or health and safety or other statute, regulation or rule of law or equity for any purpose whatsoever, and shall not incur any successorship liabilities whatsoever; and

(c)     the Debtors shall bear all responsibility for any liability whatsoever (including without limitation losses, costs, damages, fines, or awards)

Original Court Copy

- 7 -

relating to claims of customers, employees and any other persons arising from events occurring at the Stores during and after the term of the Sale, or otherwise in connection with the Sale, except to the extent that such claims are the result of events or circumstances caused or contributed to by the gross negligence or wilful misconduct of the Consultant, its employees, agents or other representatives, or otherwise in accordance with the Consulting Agreement.

12.     THIS COURT ORDERS that to the extent any Landlord may have a claim against the Debtors arising solely out of the conduct of the Consultant in conducting the Sale for which the Debtors and/or the Receiver has claims against the Consultant under the Consulting Agreement, the Debtors and/or the Receiver, as applicable, shall be deemed to have assigned such claims free and clear to the applicable Landlord (the "**Assigned Landlord Rights**"); provided that each such Landlord shall only be permitted to advance each such claims against the Consultant if written notice, including the reasonable details of such claims, is provided by such Landlord to the Consultant and the Receiver during the period from the Sale Commencement Date to the date that is thirty (30) days following the Sale Termination Date, provided however that the Landlords shall be provided with access to the Stores to inspect the Stores within fifteen (15) days following the Sale Termination Date.

**CONSULTANT AN UNAFFECTED CREDITOR**

13.     THIS COURT ORDERS that the Receiver is hereby authorized and directed, in accordance with the Consulting Agreement, to remit all amounts that become due to the Consultant thereunder.

14.     THIS COURT ORDERS that no Encumbrances shall attach to any amounts payable or to be credited or reimbursed to, or retained by, the Consultant pursuant to the Consulting Agreement, including, without limitation, any amounts to be reimbursed by the Receiver to the Consultant pursuant to the Consulting Agreement, and at all times the Consultant will retain such amounts, free and clear of all Encumbrances, notwithstanding

- 8 -

any enforcement or other process or Claims, all in accordance with the Consulting Agreement.

15. THIS COURT ORDERS that notwithstanding:

    (a)    the pendency of these proceedings;

    (b)    application for a bankruptcy order now or hereafter issued pursuant to the Bankruptcy and Insolvency Act ("BIA") in respect of F21 Canada, or any bankruptcy order made pursuant to any such applications;

    (c)    any assignment in bankruptcy made in respect of the Debtors;

    (d)    the provisions of any federal or provincial statute; or

    (e)    any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of encumbrances, contained in any existing loan documents, lease, mortgage, security agreement, debenture, sublease, offer to lease or other document or agreement to which one or more of the Debtor(s) are a party;

the Consulting Agreement and the transactions and actions provided for and contemplated therein, including without limitation, the payment of amounts due to the Consultant and the Assigned Landlord Rights shall be binding on any trustee in bankruptcy that may be appointed in respect of any one or more of the Debtors and shall not be void or voidable by any Person, including any creditor of the Debtors, nor shall they, or any of them, constitute or be deemed to be a preference, fraudulent conveyance, transfer at undervalue or other challengeable reviewable transaction, under the BIA or any applicable law, nor shall they constitute oppressive or unfairly prejudicial conduct under any applicable law.

**OTHER**

16. THIS COURT ORDERS that the Receiver is authorized and permitted to transfer to the Consultant such personal information of the Debtors in the Receiver's custody and

Original Court Copy

- 9 -

control solely for the purposes of assisting with and conducting the Sale and only to the extent necessary for such purposes.

**GENERAL**

17.   THIS COURT ORDERS that this Order shall have full force and effect in all provinces and territories in Canada.

18.   THIS COURT HEREBY REQUESTS the aid and recognition of any Court, tribunal, regulatory or administrative bodies, having jurisdiction in Canada or in the United States of America, to give effect to this Order and to assist the Consultant, the Receiver and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Consultant and the Receiver, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Receiver in any foreign proceeding, or to assist the Consultant and the Receiver and their respective agents in carrying out the terms of this Order.

March ●, 2020

_____

I, JEREMY DACKS, OF THE FIRM OF OSLER, HOSKIN & HARCOURT LLP, HEREBY CERTIFY THAT I HAVE RECEIVED THE CONSENTS AS TO FORM OF THE FOLLOWING PARTIES:

AS DIRECTED BY THE HONOURABLE JUSTICE J.G. EDMOND

_____

Original Court Copy

SCHEDULE "A"
SALE GUIDELINES
(SEE ATTACHED)

Original Court Copy

## SALE GUIDELINES

The following procedures shall apply to any Sales, including those to be held at retail stores (the "**Stores**") of Nygård Holdings (USA) Limited, Nygard Inc., Fashion Ventures, Inc., Nygard NY Retail, LLC, Nygard Enterprises Ltd, Nygard Properties Ltd., 4093879 Canada Ltd., 4093887 Canada Ltd., or Nygard International Partnership (collectively, "**Nygard**"). Terms capitalized but not defined in these Sale Guidelines have the meanings ascribed to them in the Consulting Agreement (as defined below).

1.    Except as otherwise expressly set out herein, and subject to: (i) the Order of the Queen's Bench (Winnipeg Centre) (the "**Court**") dated March ●, 2020 approving the Consulting Agreement between ● (the "**Consultant**") and Richter Advisory Group Inc., in its capacity as receiver of Nygard (the "**Receiver**") dated March ●, 2020 (the "**Consulting Agreement**") and the transactions contemplated thereunder (the "**Approval Order**");  (ii) any further Order of the Court; or (iii) any subsequent written agreement between the Receiver and applicable landlord(s) of Nygard (individually, a "**Landlord**" and, collectively, the "**Landlords**") and approved by the Consultant, the Sale shall be conducted in accordance with the terms of the applicable leases or other occupancy agreements for each of the affected Stores (individually, a "**Lease**" and, collectively, the "**Leases**"). However, nothing contained herein shall be construed to create or impose upon the Receiver, Nygard or the Consultant any additional restrictions not contained in the applicable Lease or other occupancy agreement.

2.    The Sale shall be conducted so that each of the Stores remain open during their normal hours of operation provided for in the respective Leases for the Stores until the applicable premises vacate date for each Store under the Consulting Agreement (the "**Vacate Date**"), and in all cases no later than ●, 2020.

3.    The Sale shall be conducted in accordance with applicable federal, provincial and municipal laws, unless otherwise ordered by the Court.

4.    All display and hanging signs used by the Consultant in connection with the Sale shall be professionally produced and all hanging signs shall be hung in a professional manner. Notwithstanding anything to the contrary contained in the Leases, the Consultant may advertise the Sale at the Stores as a "everything on sale", "everything must go", "store closing" or similar theme sale at the Stores (provided however that no signs shall advertise the Sale as a "bankruptcy", a "liquidation" or a "going out of business" sale, it being understood that the French equivalent of "clearance" is "liquidation" and is permitted to be used). Forthwith upon request, the Consultant shall provide the proposed signage packages along with proposed dimensions by e-mail or facsimile to the applicable Landlords or to their counsel of record and the applicable Landlord shall notify the Consultant of any requirement for such signage to otherwise comply with the terms of the Lease and/or the Sale Guidelines and where the provisions of the Lease conflicts with these Sale Guidelines, these Sale Guidelines shall govern. The Consultant shall not use neon or day-glow signs or any handwritten signage (save that handwritten "you pay" or "topper" signs may be used). If a Landlord is concerned with "Store Closing" signs being placed in the front window of a Store or with the number or size of the signs in the front window, the Receiver, the Consultant and the Landlord will work together to resolve the dispute. Furthermore, with

Original Court Copy

respect to enclosed mall Store locations without a separate entrance from the exterior of the enclosed mall, no exterior signs or signs in common areas of a mall shall be used unless explicitly permitted by the applicable Lease. In addition, the Consultant shall be permitted to utilize exterior banners/signs at stand alone or strip mall Stores or enclosed mall Store locations with a separate entrance from the exterior of the enclosed mall; provided, however, that: (i) no signage in any other common areas of a mall shall be used; and (ii) where such banners are not explicitly permitted by the applicable Lease and the Landlord requests in writing that banners are not to be used, no banners shall be used absent further Order of the Court, which may be sought on an expedited basis on notice to the Service List (as defined in the Receivership Order, defined below). Any banners used shall be located or hung so as to make clear that the Sale is being conducted only at the affected Store and shall not be wider than the premises occupied by the affected Store. All exterior banners shall be professionally hung and to the extent that there is any damage to the facade of the premises of a Store as a result of the hanging or removal of the exterior banner, such damage shall be professionally repaired at the expense of the Consultant. The Consultant shall not utilize any commercial trucks to advertise the Sale on the Landlord's property or mall ring roads.

5.    The Consultant shall be permitted to utilize sign walkers and street signage; provided, however, such sign walkers and street signage shall not be located on the shopping centre or mall premises.

6.    The Consultant shall be entitled to include additional merchandise in the Sale; provided that (a) the additional merchandise is currently in the possession of the Receiver or Nygard or has previously been ordered by or on behalf of Nygard and is currently in transit to Nygard; and (b) the additional merchandise is of like kind and category and no lesser quality to the Merchandise, and consistent with any restriction on usage of the Stores set out in the applicable Leases.

7.    Conspicuous signs shall be posted in the cash register areas of each Store to the effect that all sales are "final" and customers with any questions or complaints are to call Nygard's hotline number.

8.    The Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any of the Stores on Landlord's property, unless explicitly permitted by the applicable Lease or, if distribution is customary in the shopping centre in which the Store is located. Otherwise, the Consultant may solicit customers in the Stores themselves. The Consultant shall not use any giant balloons, flashing lights or amplified sound to advertise the Sale or solicit customers, except as explicitly permitted under the applicable Lease or agreed to by the Landlord.

9.    At the conclusion of the Sale in each Store, the Consultant and the Receiver shall arrange that the premises for each Store are in "broom-swept" and clean condition, and shall arrange that the Stores are in the same condition as on the commencement of the Sale, ordinary wear and tear excepted. No property of any Landlord of a Store shall be removed or sold during the Sale. No permanent fixtures (other than Nygard FF&E (as defined below) for clarity) may be removed without the Landlord's written consent unless otherwise provided by the applicable Lease and in accordance with the Order of the Court dated March 10, 2020 whereby, among other things, the Receiver was appointed (the "**Receivership Order**") and the Approval Order. Any trade fixtures or personal property left in a Store after the

Original Court Copy

applicable Vacate Date shall be deemed abandoned, with the applicable Landlord having the right to dispose of the same as the Landlord chooses, without any liability whatsoever on the part of the Landlord. Nothing in this paragraph shall derogate from the Consultant's obligations under the Consulting Agreement.

10. Subject to the terms of paragraph 8 above, the Consultant shall sell furniture, fixtures and equipment owned by Nygard ("**Nygard FF&E**") and located in the Stores during the Sale. For greater certainty, Nygard FF&E does not include any portion of the Stores' HVAC, sprinkler, fire suppression, or fire alarm systems. The Consultant may advertise the sale of Nygard FF&E consistent with these Sale Guidelines on the understanding that the Landlord may require such signs to be placed in discreet locations within the Stores reasonably acceptable to the Landlord. Additionally, the purchasers of any Nygard FF&E sold during the Sale shall only be permitted to remove the Nygard FF&E either through the back shipping areas designated by the Landlord or through other areas after regular Store business hours or, through the front door of the Store during Store business hours if the Nygard FF&E can fit in a shopping bag, with Landlord's supervision as required by the Landlord and in accordance with the Receivership Order and the Approval Order. The Consultant shall repair any damage to the Stores resulting from the removal of any Nygard FF&E by the Consultant or by any third party purchasers of Nygard FF&E from Consultant.

11. The Consultant shall not make any alterations to interior or exterior Store lighting, except as authorized pursuant to the affected Lease. The hanging of exterior banners or other signage, where permitted in accordance with the terms of these Sale Guidelines, shall not constitute an alteration to a Store.

12. The Receiver hereby provides notice to the Landlords of Nygard of the Consultant's intention to sell and remove Nygard FF&E from the Stores. The Consultant shall make commercially reasonable efforts to arrange with each Landlord represented by counsel on the Service List, and with any other Landlord that so requests, a walk-through with the Consultant to identify the Nygard FF&E subject to the Sale. The relevant Landlord shall be entitled to have a representative present in the applicable Stores to observe such removal. If the Landlord disputes the Consultant's entitlement to sell or remove any Nygard FF&E under the provisions of the Lease, such Nygard FF&E shall remain on the premises and shall be dealt with as agreed between the Receiver, the Consultant and such Landlord, or by further Order of the Court upon application by Receiver on at least two (2) days' notice to such Landlord.

13. The Consultant and its agents and representatives shall have the same access rights to the Stores as Nygard and/or the Receiver under the terms of the applicable Lease and the Receivership Order, and the Landlords shall have the rights of access to the Stores during the Sale provided for in the applicable Lease (subject, for greater certainty, to any applicable stay of proceedings).

14. The Receiver and the Consultant shall not conduct any auctions of Merchandise or Nygard FF&E at any of the Stores.

15. The Consultant and the Receiver shall each designate a party to be contacted by the Landlords should a dispute arise concerning the conduct of the Sale. The initial contact person for the Consultant shall be ⬤ of ⬤ who may be reached by phone at ⬤ or email at ⬤.

Original Court Copy

If the parties are unable to resolve the dispute between themselves, each of the Landlord and the Receiver shall have the right to schedule a "status hearing" before the Court on no less than two (2) days written notice to the other parties, during which time the Consultant shall cease all activity in dispute other than activity expressly permitted herein, pending determination of the matter by the Court; provided, however, subject to paragraph 4 of these Sale Guidelines, if a banner has been hung in accordance with these Sale Guidelines and is the subject of a dispute, the Consultant shall not be required to take any such banner down pending determination of any dispute.

16. Nothing herein or in the Consulting Agreement is, or shall be deemed to be a consent by any Landlord to the sale, assignment or transfer of any Lease, or shall, or shall be deemed to, or grant to the Landlord any greater rights than already exist under the terms of any applicable Lease.

17. These Sale Guidelines may be amended by written agreement between the Consultant, the Receiver and the applicable Landlord, or upon further order of the Court.

Original Court Copy

## Exhibit B

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 15 |
| NYGARD HOLDINGS (USA) LIMITED, et al.,[1] | Case No. 20-10828 (___) |
| Debtors in a Foreign Proceeding. | Joint Administration Requested |

### [PROPOSED] ORDER RECOGNIZING FOREIGN MAIN PROCEEDING AND RELATED RELIEF

Upon the *Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding and Related Relief* [Dkt 2] (together with the Forms of Voluntary Petition [Dkt 1], collectively, the "Petition")[2] of Richter Advisory Group Inc. ("Richter"), solely in its capacity as court-appointed receiver (and not in its personal or corporate capacity) (the "Receiver") and authorized foreign representative (the "Foreign Representative") of:

(a) Nygard Holdings (USA) Limited ("Holdings"); Nygard Inc. ("Inc."); Nygard NY Retail, LLC ("NY Retail"); and Fashion Ventures, Inc. ("Fashion") (collectively, the "U.S. Debtors"), and

(b) Nygard International Partnership ("International"); Nygard Properties Ltd. ("Properties"); Nygard Enterprises Ltd. ("Enterprises"); 4093887 Canada Ltd. ("4093887"); and 4093889 Canada Ltd. ("4093889") (collectively, the "Canadian Debtors," and together with the U.S. Debtors, the "Debtors"), each of which was placed in a receivership on March 18, 2020 by

---

[1] The Debtors in these Chapter 15 cases, along with the last four digits of each Debtor's U.S. Federal Employer Identification Number ("FEIN") or Canada Revenue Agency Business Registration Number ("CRA") , are: Nygard Holdings (USA) Limited (FEIN 3048), Nygard Inc. (FEIN 0509), Nygard NY Retail, LLC (FEIN 1672), Fashion Ventures, Inc. (FEIN 0956), Nygard International Partnership (FEIN 1535), Nygard Properties Ltd. (CRA 0003), Nygard Enterprises Ltd. (FEIN 7127), 4093887 Canada Ltd. (FEIN 1534), 4093879 Canada Ltd. (FEIN 1533).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Petition. References to sections and chapters are references to sections and chapters of the Bankruptcy Code unless otherwise stated.

order (the "Receivership Order") of the Court of Queen's Bench Manitoba (the "Canadian Court"),
Court File No. CI 20-01-26627 (the "Canadian Proceeding"), seeking entry of an order pursuant
to sections 105(a), 1504, 1507, 1509, 1515, 1517, 1520, and 1521 of Title 11 of the United States
Code (the "Bankruptcy Code"), granting recognition of the Foreign Proceeding as a foreign main
proceeding, and granting related relief;[3] and

Upon the record of this case, the hearing held on [•] [•], 2020 (the "Hearing") to consider
(i) the Petition and (ii) the relief requested in the *Motion of the Receiver as Authorized Foreign
Representative for Entry of an Order Granting Provisional Relief Pursuant to Sections 105(a) and
1519 of the Bankruptcy Code*; and

Upon the Court's review and consideration of the Petition and the Benchaya Declaration,
and the Court having found and determined that the relief sought in the Petition is consistent with
the purposes of Chapter 15 and is in the best interests of the Debtors and their creditors; and after
due deliberation and sufficient cause appearing therefor; and for the reasons stated on the record
at the Hearing:

**IT IS HEREBY FOUND AND DETERMINED:[4]**

A.      This Court has jurisdiction to consider the Petition and the relief requested therein
pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the
United States District Court for the Southern District of New York dated as of January 31, 2012,

---

[3]      References to sections and chapter are references to sections and chapters of the Bankruptcy Code unless
otherwise stated.

[4]      The findings and conclusions set forth herein and on the record of the Hearing constitute this Court's findings of
fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein
by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). To the extent
any of the findings of fact herein constitute conclusions of law, they are adopted as such. To the extent any of the
conclusions of law herein constitute findings of fact, they are adopted as such.

Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 1, 2012) (Preska, C.J.).

      B.      The Petition and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P), and this Court may enter a final order consistent with Article III of the United States Constitution.

      C.      Venue is proper before this Court pursuant to 28 U.S.C. § 1410(1) and (3).

      D.      Good, sufficient, appropriate, and timely notice of the filing of the Petition and the Hearing has been given by the Foreign Representative, pursuant to Bankruptcy Rules 1011(b) and 2002(q) and the *Order Scheduling Hearing on Chapter 15 Petition and Related Relief and Specifying Form and Manner of Service of Notice* [Dkt [•]] to: (i) the United States Trustee for the Southern District of New York (Attn: Paul K. Schwartzberg, Esq.); (ii) the Debtors; (iii) Peter J. Nygard; (iv) all persons or bodies authorized to administer foreign proceedings of the Debtors, including the Canadian Proceeding; (v) all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code; (vi) all parties to litigation pending in the United States to which any of the Debtors is a party at the time of the filing of the Petition; and (vii) all parties that have filed a notice of appearance in these chapter 15 cases. In light of the nature of the relief requested and prior orders of this Court, no other or further notice is required.

      E.      No objections or responses were filed that have not been overruled, withdrawn, or otherwise resolved.

      F.      Each Debtor has property located in this District, and therefore, each Debtor is "eligible" to be a debtor in these chapter 15 cases pursuant to sections 109 and 1501.

      G.      The Canadian Proceeding is a "foreign proceeding" as such term is defined in section 101(23).

H.    The Canadian Proceeding is pending in Canada, which is where the Debtors have their "center of main interests" as referred to in section 1517(b)(1).  As such, the Canadian Proceeding is a "foreign main proceeding" pursuant to section 1502(4), is entitled to recognition as a foreign main proceeding pursuant to section 1517(b)(1), and is entitled to all relief afforded to foreign main proceedings under section 1520.  The Foreign Representative is a "person" as such term is defined in section 101(41) and has been duly appointed and designated as the "foreign representative" of the Debtors as such term is defined in section 101(24).

I.    These chapter 15 cases were properly commenced pursuant to sections 1504 and 1509, and the Petition satisfies the requirements of section 1515.

J.    The Foreign Representative and each Debtor, as applicable, is entitled to the additional assistance and discretionary relief under sections 1507 and 1521 (including application of section 365) requested in the Petition.

K.    The Foreign Representative has demonstrated that application of section 365, as made applicable by sections 105(a), 1507 and 1521(a)(7), is necessary to enable the Foreign Representative or any of the Debtors to assume or reject a contract or compel a contract counterparty to perform under a contract.  Absent application of section 365, there is a material risk that one or more of the Debtors' contract counterparties may terminate agreements or discontinue performance, which could impose severe economic consequences on the Debtors' estates and interfere with liquidation efforts.

L.    The relief granted herein is necessary and appropriate, in the interests of the public and of international comity, not inconsistent with the public policy of the United States, warranted pursuant to sections 105(a), 1504, 1507, 1509, 1515, 1517, 1520 and 1521 and will not cause hardship to any party in interest. To the extent that any hardship or inconvenience may result to

such parties, it is outweighed by the benefits of the requested relief to the Foreign Representative, the Debtors, their creditors and other parties in interest.

M.      The relief granted herein is necessary to effectuate the purposes of chapter 15 and to protect the Debtors and the interests of their creditors and all parties in interest.

N.      In accordance with section 1507(b), the relief granted will reasonably assure: (i) the just treatment of all holders of claims against or interests in the Debtors' property; (ii) the protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in the Canadian Proceeding; (iii) the prevention of preferential or fraudulent dispositions of property of the Debtors; and (iv) the distribution of proceeds of the Debtors' property substantially in accordance with the order prescribed in the Bankruptcy Code.

O.      All creditors and other parties in interest, including the Debtors, are sufficiently protected in the grant of the relief ordered hereby in compliance with section 1522(a).

**BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING THEREFOR, IT IS HEREBY ORDERED:**

1.      The Petition and the relief requested are granted, and any objections or responses thereto that have not been withdrawn or resolved are overruled with prejudice.

2.      The Canadian Proceeding is recognized as a "foreign main proceeding" under sections 1517(a) and 1517(b)(1).

3.      The Receivership Order, including any extensions or amendments thereto authorized by the Canadian Court, is hereby enforced on a final basis and given full force and effect in the United States (except as otherwise expressly provided herein).

4.    The Foreign Representative is recognized as the "foreign representative" as defined in section 101(24).

5.    All relief and protection afforded to a foreign main proceeding under section 1520 is hereby granted to the Canadian Proceeding, the Foreign Representative, the Debtors, and their assets located in the United States.

6.    Sections 362 and 365 shall hereby apply with respect to the Debtors and the property of the Debtors that is located within the territorial jurisdiction of the United States. All entities (as defined in section 101(15)) other than the Foreign Representative and its authorized representatives and agents are hereby permanently enjoined from:

(a) executing against any asset of any Debtor;

(b) commencing or continuing, including issuing or employing process, of a judicial, quasi-judicial, administrative, regulatory, arbitral, or other action or proceeding, or to recover a claim, including, without limitation, any and all unpaid judgments, settlements or otherwise against any Debtor, its property, or any direct or indirect transferee of or successor to any property of any Debtor, or any property of such transferee or successor, or the seeking of any discovery related to any of the foregoing, which in each case is in any way inconsistent with, relates to, or would interfere with, the administration of the Debtors' estates in the Canadian Proceeding or Canadian law;

(c) taking or continuing any act to create, perfect or enforce a lien or other security interest, setoff or other claim against any Debtor or any of its property or proceeds thereof, which in each case is in any way inconsistent with, relates to, or would

interfere with, the administration of the Debtors' estates in the Canadian Proceeding or Canadian law;

(d) transferring, relinquishing or disposing of any property of any Debtor to any entity other than the Foreign Representative and its authorized representatives and agents or taking or continuing any act to obtain possession of, commingle, or exercise control over, such property, which in each case is in any way inconsistent with, relates to, or would interfere with, the administration of the Debtors' estates in the Canadian Proceeding or Canadian law;

(e) commencing or continuing in any manner, directly or indirectly, an individual action or proceeding concerning any Debtor's assets, rights, obligations or liabilities, or to resolve any dispute arising out of or relating to the Canadian Proceeding or Canadian law;

(f) declaring or considering the filing of the Canadian Proceeding, the Receivership Order or any of these chapter 15 cases a default or event of default under any agreement, contract or arrangement; and

(g) terminating, modifying, refusing to perform, or otherwise accelerating obligations or exercising remedies under any contract with any of the Debtors on the basis of (i) the insolvency or financial condition of the Debtors at any time before the closing of these cases; (ii) the commencement of the Canadian Proceeding, the entry of the Receivership Order or the commencement of these chapter 15 cases; or (iii) the appointment of, and taking possession by, the Foreign Representative of any asset or contract of any Debtor;

*provided*, in each case, that such injunctions shall be effective solely within the territorial jurisdiction of the United States.

7.     Sections 1521(a)(1)-(3) and (5)-(7) shall apply with respect to the Debtors and the property of the Debtors that is located within the territorial jurisdiction of the United States.

8.     Pursuant to section 1520(a)(3), the Foreign Representative is entitled to operate the Debtors' businesses and administer their assets, including without limitation, all bank accounts and accounts receivable. All banks and financial institutions at which the Debtors maintain bank accounts or other accounts are authorized and directed to: (i) honor the Foreign Representative's instructions with respect to accessing any such accounts; and (ii) accept, hold, or permit withdrawal, transfer, or other disposition of funds in accordance with the Foreign Representative's instructions.

9.     Subject to sections 1520 and 1521, the Canadian Proceeding and the Receivership Order, and the transactions consummated or to be consummated thereunder, shall be granted comity and given full force and effect in the United States to the same extent that they are given effect in Canada, and each is binding on all creditors of the Debtors and their successors and assigns.

10.     Under section 1521(a)(6), all prior relief granted to the Debtors or the Foreign Representative by this Court under section 1519(a) shall be extended and the *Order Granting Motion of the Foreign Representative for Provisional Relief Pursuant to Sections 105(a) and 1519* [Dkt [_]] shall remain in full force and effect, notwithstanding anything to the contrary contained therein.

11.     No action taken by the Foreign Representative, any Debtor or their respective agents, representatives, advisors, or counsel, in preparing, disseminating, applying for,

implementing or otherwise acting in furtherance of the Canadian Proceeding, the documents contemplated thereunder, this Order, the chapter 15 cases, any further order for additional relief in the chapter 15 cases, or any adversary proceedings in connection therewith, will be deemed to constitute a waiver of the limit on jurisdiction afforded such persons under sections 306 or 1510.

12.     No party shall incur any liability for following, in good faith, the terms of this Order (whether by acting or refraining from acting).

13.     Notwithstanding anything to the contrary contained herein, this Order shall not, and shall not be construed as: (i) enjoining the police or regulatory act of a governmental unit, including a criminal action or proceeding, to the extent not stayed under section 362; (ii) staying the exercise of any rights that section 362(o) does not allow to be stayed; and (iii) staying the Class Action Lawsuit until a judgment is achieved, after which the Class Action Lawsuit plaintiffs, acting in any capacity including as judgment creditors, shall be stayed from any efforts to record, collect, or otherwise enforce any judgment they may obtain. In furtherance of subparagraph (iii) above, paragraph 13 of the Receivership Order is incorporated by reference.

14.     The Foreign Representative, the Debtors, and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules of this Court.

15.     Notwithstanding any provision in the Bankruptcy Code or the Bankruptcy Rules to the contrary, (i) this Order shall be effective and enforceable immediately upon its entry, (ii) the Foreign Representative is not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order and (iii) this Order shall constitute a final order within the meaning of 28 U.S.C. § 158(a).

16.     The Foreign Representative and its agents are authorized and empowered to take all actions necessary to effectuate the relief granted under this Order.

17.    This Court shall retain jurisdiction with respect to the implementation, enforcement, amendment or modification of this Order.

Dated: March _____, 2020
       New York, New York

 

_____

UNITED STATES BANKRUPTCY JUDGE

**Exhibit C**

**Rule 1515(c) Declaration**

Steven J. Reisman, Esq.
Jerry L. Hall, Esq.
Cindi M. Giglio, Esq.
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, NY 10122
Telephone: (212) 940-8800
Facsimile: (212) 940-8876
sreisman@katten.com
jerry.hall@katten.com
cindi.giglio@katten.com

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| NYGARD HOLDINGS (USA) LIMITED, et al.,[1] | Case No. 20-10828 (___) |
| Debtors in a Foreign Proceeding. | Joint Administration Requested |

### DECLARATION OF FOREIGN REPRESENTATIVE
### PURSUANT TO SECTION 1515(C) OF THE BANKRUPTCY CODE

I, Gilles Benchaya, on behalf of Richter, pursuant to 28 U.S.C. § 1746, hereby declare

under penalty of perjury under the laws of the United States of America, as follows:

1.      I am a Senior Vice President in the Toronto, Ontario office of Richter Advisory

Group Inc. ("Richter"). Richter, is the court-appointed receiver (the "Receiver") and authorized

foreign representative (the "Foreign Representative")[2] of:

---

[1]  The Debtors in these Chapter 15 cases, along with the last four digits of each Debtor's U.S. Federal Employer
Identification Number ("FEIN") or Canada Revenue Agency Business Registration Number ("CRA"), are:
Nygard Holdings (USA) Limited (FEIN 3048), Nygard Inc. (FEIN 0509), Nygard NY Retail, LLC (FEIN
1672), Fashion Ventures, Inc. (FEIN 0956), Nygard International Partnership (FEIN 1535), Nygard Properties
Ltd. (CRA 0003), Nygard Enterprises Ltd. (FEIN 7127), 4093879 Canada Ltd. (FEIN 1533), 4093887 Canada
Ltd. (FEIN 1534).

[2]  Richter acts in these chapter 15 cases solely in its capacity as Receiver and Foreign Representative.

(a)      Nygard Holdings (USA) Limited ("Holdings");

Nygard Inc. ("Inc.");

Nygard NY Retail, LLC ("NY Retail"); and

Fashion Ventures, Inc. ("Fashion") (collectively, the "U.S. Debtors"); and

(b)      Nygard International Partnership ("International");

Nygard Properties Ltd. ("Properties");

Nygard Enterprises Ltd. ("Enterprises");

4093887 Canada Ltd. ("4093887"); and

4093889 Canada Ltd. ("4093889") (collectively, the "Canadian Debtors," and together with the U.S. Debtors, the "Debtors").

2.      Each of the Debtors was placed in a receivership on March 18, 2020 by order (the "Receivership Order") of the Court of Queen's Bench Manitoba (the "Canadian Court"), Court File No. CI 20-01-26627 (the "Canadian Proceeding"), entered under the *Courts of Queen's Bench Act* of the Province of Manitoba and the *Bankruptcy and Insolvency Act of Canada* (the "BIA").

3.      I respectfully submit this statement, as required by 11 U.S.C. § 1515(c), in support of the verified petition filed herewith seeking recognition by this Court of the Canadian Proceeding as a "foreign main proceeding" (as defined in 11 U.S.C. § 1502(4)).

4.      To the best of my knowledge, the Canadian Proceeding is the only known pending "foreign proceeding" (as defined in 11 U.S.C. § 101(23), regarding the Debtors.

5.      I certify under penalty of perjury that each of the statements in this declaration is true and correct.

Dated:  March 18, 2020
      New York, New York     RICHTER ADVISORY GROUP INC.
                                (solely in its capacity as Receiver and Foreign Representative for the Debtors)

                                By: */s/ Gilles Benchaya*
                                Gilles Benchaya, Senior Vice President