# Exhibit G

K638DOEC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JANE DOES NOS. 1-46,

                Plaintiffs,

        v.                          20 Cv. 1288 (ER)

PETER J. NYGARD, et al.,

                Defendants.

------------------------------x

                                    June 3, 2020
                                    2:00 p.m.

Before:

                    HON. EDGARDO RAMOS,

                                    District Judge

                    APPEARANCES

DiCELLO LEVITT GUTZLER LLC
        Attorneys for Plaintiffs
BY:   GREG G. GUTZLER
        JUSTIN HAWAL
            -and-
THE HABA LAW FIRM, P.A.
BY:   LISA D. HABA

MORVILLO, ABRAMOWITZ, GRAND, IASON & ANELLO P.C.
        Attorneys for Defendants
BY:   ELKAN ABRAMOWITZ
        CHRISTOPHER B. HARWOOD
        EDWARD M. SPIRO
        BRENT M. TUNIS

K638DOEC

1          (The Court and all parties appearing telephonically)

2          (Case called)

3          THE DEPUTY CLERK:  Counsel, please state your name for

4     the record, starting with counsel for plaintiff.

5          MR. GUTZLER:  Good afternoon, Judge Ramos and counsel.

6     This is Greg Gutzler, from DiCello Levitt Gutzler, on behalf of

7     plaintiffs.  I am joined by my colleagues, Justin Hawal of

8     DiCello Levitt Gutzler, and Lisa Haba of The Haba Law Firm.

9          THE COURT:  Good afternoon.

10          MR. ABRAMOWITZ:  Good afternoon, your Honor.  Elkan

11     Abramowitz, along with Edward Spiro and Christopher Harwood and

12     Brent Tunis, for Mr. Nygard.

13          THE COURT:  Good afternoon to you all.

14          This matter is on for a premotion conference at the

15     request of plaintiffs.  I just want to note at the outset that

16     this matter is being conducted telephonically and remotely and

17     we are being assisted by a court reporter.  So when you speak,

18     please state your name and please speak slowly and clearly so

19     the court reporter can take everything down accurately.

20          Mr.Gutzler, weren't we just here?

21          MR. GUTZLER:  Yes, your Honor, we were here.  We have

22     new events that have come to our attention that requires the

23     Court's attention.  So thank, your Honor, for the time.

24          THE COURT:  What is it that you want to do?  What is

25     new?

K638DOEC

1       MR. GUTZLER:  So, your Honor, there is a brief factual

2   backdrop, if I may provide it for you, to explain why we are

3   here with respect to evidence destruction as well as leave to

4   file a second amended complaint.  I would like to deal with the

5   evidence destruction first, if I may, your Honor.

6       THE COURT:  Certainly.

7       MR. GUTZLER:  So, your Honor, the brief factual

8   backdrop is that after the filing of this lawsuit, hundreds of

9   witnesses have voluntarily come forward to us, plaintiffs'

10  counsel, with information, and they have expressed how grateful

11  they are that the truth is being revealed, and they provided a

12  lot of very helpful information as to where to find evidence

13  and what is going on.

14      THE COURT:  I'm sorry, Mr. Gutzler.  Did you say

15  hundreds of witnesses?

16      MR. GUTZLER:  Yes.  Including, by the way, your Honor,

17  victim survivors, and that is why we seek a second amended

18  complaint, but I will get to that.

19      Your Honor, in the course of those conversations with

20  hundreds of witnesses that have voluntarily come forward, we

21  have learned a lot about Nygard's operations and conduct with

22  its global headquarters right here in Times Square, Judge.  We

23  also learned about efforts to silence and intimidate witnesses,

24  the use of company resources for facilitating the sex

25  trafficking ring, including paying victims in company cash and

K638DOEC

1    paying as company employees dozens of sex trafficking

2    recruiters and other personnel involved in the operation.

3            With respect to evidence, precisely on point here,

4    after we filed this lawsuit, several people independently

5    called me personally to say that they have heard that Nygard IT

6    employees were being instructed to do a couple of different

7    things. One, your Honor, was to, quote, clean up the Nygard

8    corporate website and other Internet locations that contained

9    photos and videos of Nygard and various women. The second

10   thing that these victims came forward to tell us is that Nygard

11   IT personnel were being asked to try to clean up the results of

12   Google searches so certain content in URLs no longer showed up

13   in Google's indexing. These, quote, as they said to me,

14   clean-up efforts were corroborated when we determined that many

15   links that we actually cited to in our February 13 complaint

16   suddenly no longer worked just days later. Defendants will

17   only now admit this cleanup did in fact occur, but the fact is

18   we were right about that information.

19           That brings us to the next salient issue that came up

20   since we were last together. Just as we heard about the

21   clean-up efforts, which were proven to be true, we also heard

22   from additional witnesses who called us to offer help and

23   information. They were informed that there were instructions

24   to IT employees to destroy other documents and files. Of

25   course, your Honor, we weren't privy to exactly what because we

K638DOEC

1    don't have that information.  So, your Honor, that is what

2    brings us here today.

3           Obviously, we don't have any way of knowing what is

4    happening inside Nygard's corporate circle, particularly now

5    that the lawsuit has been filed and the FBI has an active sex

6    trafficking investigation with Nygard and his companies, but

7    what we can do is listen to information brought to us and try

8    to connect the dots.  And the very best thing that we can do is

9    to alert Nygard's counsel so they can fulfill their obligations

10   to ensure evidence is not destroyed.  And, your Honor, we did

11   that here, but to no avail.

12          Because of the critical importance of this case, and

13   the evidence that resides on the corporate computers and files,

14   I wrote a letter to Nygard's counsel on the phone today on

15   February 25.  Your Honor, that was two weeks after we filed

16   this lawsuit.  In that letter, February 25, I passed along the

17   best information that I had and provided that to counsel

18   promptly after hearing the information from multiple

19   independent sources.  The goal, your Honor, was simple but

20   critically important, to seek the cooperation of counsel to

21   ensure that evidence isn't destroyed.  We did not hide the

22   information in some type of effort to later trap defendants in

23   our spoliation claim.  We tried from the outset to avoid the

24   destruction that did occur.  We don't want to be in a position

25   now to try to recover tens of thousands of files that were

K638DOEC

     1    deleted.  Your Honor, we want the evidence, we want it

     2    preserved, and we are entitled to it.

     3              THE COURT:  Is that evidence in the possession of

     4    Mr. Richter or the Richter Group?

     5              MR. GUTZLER:  So the answer to that, your Honor, is

     6    not prior to the destruction.  The answer to your question is

     7    now it is, it wasn't before.

     8              THE COURT:  So why are you coming to me?

     9              MR. GUTZLER:  Because, your Honor, evidence was

    10    destroyed before Richter took over by the Nygard corporate

    11    defendants.

    12              THE COURT:  Can I just stop you again, Mr. Gutzler,

    13    because I started by asking you what is new and you told me

    14    what is new is we learned about all of this destruction.  I am

    15    reading from your letter, and in your letter on page 2 at the

    16    very top line you write, "On March 11, 2020, the Winnipeg Free

    17    Press published an article stating that defendants did not take

    18    appropriate measures, but rather, only issued a litigation hold

    19    on February 26."  Then in the next paragraph you write, On

    20    April 27, 2020, Richter authored its supplementary first

    21    report, in which it found that in excess of 10,000 files were

    22    deleted.

    23              So let me go back to my first question.  What is new?

    24              MR. GUTZLER:  I became aware of that Richter report.

    25    Counsel did not inform me that evidence had been destroyed.  I

K638DOEC

1    literally happened upon the Richter report, and I read through

2    the entire thing, and only then did I discover, your Honor,

3    after our last hearing, that evidence had been destroyed, after

4    I had put opposing counsel on notice, and I was never informed

5    of that by counsel.  So we had to bring it to your Honor's

6    attention.

7              THE COURT:  Can I back you up again.  You said you

8    came across the Richter report.  How did that happen?

9              MR. GUTZLER:  So, your Honor, the Richter report, the

10   way it works in the Canadian receivership, apparently, is they

11   actually have a website that will occasionally publish reports

12   that the Canadian receiver puts out, and I just was doing some

13   homework and I happened to stumble upon it.

14             THE COURT:  So that report was not kept from you.

15             MR. GUTZLER:  It wasn't kept from me, but it also

16   wasn't given to me, and opposing counsel certainly knew about

17   the evidence being destroyed after I asked about it and I was

18   not informed.  So it wasn't kept from me, in terms of the

19   report by Richter was publicly available, but I did not know

20   about the supplemental report on April 27, I just happened upon

21   it.

22             THE COURT:  OK.

23             MR. GUTZLER:  I appreciate the question, your Honor,

24   and I understand what you are asking me.

25             So, your Honor, when I did raise the issue on February

K638DOEC

| 1 | 25, we wanted counsel to put measures in place.  In response, I |

1    25, we wanted counsel to put measures in place.  In response, I

2    asked five times -- again, your Honor, this is February 25 -- I

3    asked, I counted five times to counsel, was a litigation hold

4    issued, and if so, when was it issued?  Counsel refused to

5    answer each of those five times.  We now know why.  Because the

6    litigation hold was not issued until the day after my letter

7    and I raised the issue with them.

8         THE COURT:  The litigation hold was issued the day

9    after you sent them a letter asking them to put up a litigation

10   hold?

11        MR. GUTZLER:  Yes.  Two weeks after our lawsuit was

12   filed.  But there is more to it, your Honor, and I think it's

13   very, very pertinent here.

14        So what happened was that as we were moving forward,

15   we looked at what the defendants were saying and when they had

16   a duty to preserve evidence.  Your Honor, the duty to preserve

17   evidence in this case began no later than February of 2019.

18   And I want to be clear, 2019, and I will explain why, your

19   Honor.

20        The law is undisputed.  It is incumbent upon counsel

21   to ensure document retention when a party reasonably

22   anticipates litigation.  We all know that black-letter law is

23   very, very clear.  In this case, your Honor, defendants said in

24   February of 2020 -- we are moving ahead a year -- that when we

25   filed this case, February 13th of 2020, Nygard defendants

1    stated publicly, quote, this lawsuit was expected.  It is

2    exactly what Peter Nygard predicted would happen when he filed

3    his RICO lawsuit in New York last year.  Your Honor, that was

4    filed in February of 2019.

5           So Nygard individually and the corporate defendants

6    knew it was coming as early as February of '19.  Therefore, the

7    litigation hold should have issued then, and certainly no later

8    than February of 2020 when we filed the lawsuit.  It wasn't

9    done.  So we are concerned that the litigation hold was not

10   issued until more than a year after it should have been issued,

11   and therefore, your Honor, we do not know critically what

12   documents were destroyed during that one-year period.

13          But that brings us to an even more troubling issue,

14   your Honor.  That is, after the litigation hold was issued,

15   pursuant to our letters and imploring counsel to do so, there

16   was a litigation hold on February 26.  But what we found out

17   later, again, your Honor, when I happened upon the Richter

18   report, is that over 10,000 documents were destroyed by a key

19   executive, and one of the people we named as a key

20   co-conspirator in the ring, in March.  And we had no way of

21   knowing that until we read the Richter report.  There has never

22   been an explanation, one, as to why the litigation hold was not

23   issued until two weeks after we filed the lawsuit, after the

24   FBI raid, and after the DOJ grand jury subpoena to Nygard.  We

25   also don't have any explanation why it wasn't issued in

K638DOEC

1    February of 2019 when they reasonably anticipated litigation.

2              Now, moving on to the document destruction after the

3    litigation hold.  Your Honor, you asked a very good question.

4    That was done by a key executive, Greg Fenske, on the very day

5    that Richter was going to take over the computers.  So it was

6    his last chance to delete documents.  And according to the

7    Richter report, that's what he did.

8              Your Honor, there were actually three users that

9    deleted over 10,000 documents.  Greg Fenske was one of the

10   users and he deleted over 1,000.  We do not know what happened

11   with the other 9,000 documents.  We don't know what else may

12   have been destroyed.  We don't know the other two users.

13             Your Honor, opposing counsel sent along a deletion log

14   as a later submission, and I would submit to you that that

15   deletion log raises more issues.  Very briefly, I am putting on

16   my reading glasses to note a few entries.  Bates number

17   NYINC-00713.  Your Honor, I don't know what those Bates numbers

18   are.  Perhaps it's from the FBI.  I don't know where these

19   Bates numbers came from.  Ironically, on page 1 of the Fenske

20   deletion log, one of the documents deleted was in fact the

21   litigation hold itself.  Also, on Bates page 715, deleted was a

22   file called "Nygard agreement banking details."  On that same

23   page, there were about six entries near the bottom where there

24   are a series of wires in 2018 where it says "Re Peter Nygard

25   direction to pay."  We would certainly be interested in those

K638DOEC

1    documents, your Honor.

2              THE COURT:  Can you repeat that last part?

3              MR. GUTZLER:  Yes, your Honor.  There were a series of

4    entries here, on Bates page 715, from the Greg Fenske deletion

5    log, that indicate he deleted messages, files, that talk about

6    "Peter Nygard direction to pay."  There are about six of those

7    entries as well as a wire by Peter Nygard for $10 million in

8    August of 2018.

9              I am just saying, your Honor, these seem like pretty

10   relevant documents, or at least interesting documents.  But the

11   most interesting deletions by Mr. Fenske are on page 716.  And

12   remember that the Nygard defendants said they predicted this

13   lawsuit as early as February of 2019.  The entries that show it

14   was deleted right before Richter took over the computers, after

15   the litigation hold, are a series of entries on Bates page 716.

16   Very curious, your Honor, where a period here of three months,

17   September of 2019 to December of 2019, again, after he

18   predicted the sex trafficking lawsuit and after he knew The New

19   York Times was doing a story on the sex trafficking, there are

20   a series of cash drawdowns in U.S. currency in that three-month

21   period by Nygard of over $28 million.  I would certainly be

22   curious why $28 million in a three-month period was being drawn

23   down in U.S. currency after he predicted this lawsuit.

24             Finally, your Honor, on Bates page 721, there is an

25   entry here that shows it was again deleted.  It is entitled,

K638DOEC

1   "Report.  Photos, June 18 through June 28, 2018, Falcon Lake."

2   Falcon Lake is where Peter Nygard has pamper parties and other

3   parties in Winnipeg.  So photos were deleted of a Nygard

4   residence.

5         Then finally, on Bates page 724, there are about 30

6   entries of Excel spreadsheets, all of which were deleted by

7   Mr. Fenske after the litigation hold.

8         So, your Honor, given that we have seen the deletion

9   log only of Mr. Fenske, which covers 1,000 documents, it is

10  very troubling to think what the other 9,000 documents were

11  that we know were destroyed according to Richter.  And also,

12  according to Richter, your Honor, the timing of the destruction

13  alone creates an inference of bad faith.  This is Richter, not

14  us.  It follows the FBI raid, all of the grand jury subpoenas,

15  it follows the litigation hold, and it is on the very day

16  Richter was going to take possession of Mr. Fenske's computer,

17  and on that day, according to the deletion log, Mr. Fenske

18  deleted them.

19        Now, your Honor -- go ahead, your Honor.

20        THE COURT:  Just a couple of questions.

21        First of all, do your witnesses, and I don't know if

22  you're in a position to say it now, but do your witnesses tell

23  you that it was part of the practice of Mr. Nygard and others

24  to put pictures of these pamper parties on the corporate

25  computers, corporate servers?

K638DOEC

1          MR. GUTZLER:  The answer is absolutely, unequivocally

2     yes, from multiple independent sources.  Everything about this

3     was done through the company, with the company resources,

4     company employees, company servers.  In fact, if you look at

5     the Nygard corporate website, you will see pictures of pamper

6     parties, but they took some of those down.

7          THE COURT:  Thank you.  Here is my second question.

8          As I understand it, and I guess you and defense

9     counsel will correct me if I am wrong, all of the equipment,

10    all of the servers and the backup tapes that would give you the

11    information that you want is not only currently under the

12    possession of the Richter Group, but also, they are currently

13    actively pursuing that investigation.  Now, I grant you that

14    the timing of all of this, as you have described it, is very

15    suggestive of potential wrongdoing, but it's being

16    investigated.  Am I wrong about that?

17         MR. GUTZLER:  Your Honor, I believe you're correct

18    about that.  Richter, a Canadian receiver, with a different

19    agenda is, your Honor.  So the answer to your question is yes.

20    And if I may, I would submit to you -- of course stating the

21    obvious but I do want to say it -- Richter, a Canadian

22    receiver, has a different agenda, different jurisdiction, a

23    different power and different priorities than an American

24    court, you, your Honor, that is presiding over this important

25    case.  For example, does Richter care about photos at Falcon

K638DOEC

1   Lake?  No.  Do we?  Absolutely.  Do we care about videos that

2   we understand were being kept on the corporate servers showing

3   abuse?  Yes, we want them.  Richter doesn't care.  Richter is

4   just looking to chase the apple.  We are looking to show not

5   just that, but the wrongdoing.  So, your Honor, the answer to

6   your question is yes.

7              THE COURT:  Even if he had a different agenda, and I

8   don't purport to understand completely what it is that Richter

9   is doing or why, but if he is going to conduct an

10  investigation, he is going to -- and I don't know that Richter

11  is also an individual.  I know it only as the Richter Group.

12             MR. GUTZLER:  It's a company.

13             THE COURT:  If that company is doing an investigation,

14  regardless of whether they care, they are going to indicate

15  that this is what they investigated, this is what they found,

16  these are the documents that were deleted, etc.  Am I wrong

17  about that?

18             MR. GUTZLER:  I don't think you're wrong about that,

19  your Honor.  I think it's very possible, though, they may note

20  different documents and ignore different documents that were

21  destroyed that are of critical relevance here, for example,

22  servers.  Richter Group is a receiver.  They are basically

23  coming in to try to liquidate the company and get assets for

24  creditors.  What we are talking about is a sex trafficking

25  ring.  So we are talking about evidence of violations of the

K638DOEC

1    sex trafficking statute, evidence of particular people that

2    were at pamper parties.  The Richter Group has no concern

3    whatsoever about that.

4            THE COURT:  So let's assume that that's true, that the

5    Richter Group has no concern whatsoever about those particular

6    documents that are alleged to have been deleted.  Is all of

7    that evidence, all of that forensic evidence safe for now?

8    That's the first part of the question.  The second part of that

9    question is, where is that forensic evidence?

10           MR. GUTZLER:  Let me answer the second one.  I have no

11   idea.  That's part of the reason we are here today, your Honor.

12   With respect to it being preserved, I don't know what Richter

13   is or is not going to do.  I do understand that they are

14   looking into what was deleted for purposes of their task, which

15   is as a receiver.  I have no idea what else has been destroyed.

16   I have no idea if the forensic data will be properly preserved,

17   but we would like to have somebody go in to find out what was

18   done and why, for our lawsuit, to protect our plaintiffs in

19   this case.

20           THE COURT:  Was the Richter Group appointed by a

21   Canadian court?

22           MR. GUTZLER:  I believe so, your Honor, yes.

23           THE COURT:  Shouldn't my working assumption be that

24   they are a highly skilled and experienced computer forensic

25   group that uses best practices and conducts investigations in a

K638DOEC

1    manner that does not destroy the underlying evidence?

2              MR. GUTZLER:  Good question.  I don't know about their

3    forensic abilities, but I think we should presume they are very

4    good as a receiver.  I don't know about the forensic piece,

5    your Honor.  I believe that's a very niche specialty, something

6    I don't know about.  But we would like to have for our lawsuit

7    access to that so we have it.  I don't know if Richter will

8    publish it.  I can't force Richter to give me any information.

9    I have no idea what Richter will care about, what files they

10   will go into.  Do they care about certain servers that we care

11   about?  I would submit to you, respectfully, your Honor, the

12   answer is no.  So it's not an overlapping agenda nor

13   responsibility, and our lawsuit takes precedence with our

14   plaintiffs, and that's why I am here today with your Honor.

15             THE COURT:  Assume arguendo, and I don't know the

16   answer to any of this, but that the Richter Group has

17   possession of all of this material, and has possession of it in

18   Canada, and it is currently under the auspices of a Canadian

19   court.  How can I get that stuff for you if that's the case?

20             MR. GUTZLER:  Well, I think I am asking for something

21   slightly different.  I am asking for a couple of things, if I

22   may, to answer your question.

23             THE COURT:  Sure.

24             MR. GUTZLER:  Thank you, your Honor.

25             What we would ask for is discovery, your Honor, into

K638DOEC

1   what happened.  We would like a deposition.  We would like to

2   understand why it happened, what was destroyed, and most

3   critically, your Honor, we would like for a forensic IT person

4   to be able to access the systems to see what happened.

5   Because, your Honor, I guess you're right that I have no doubt

6   that Richter is good at bankruptcy stuff, for lack of a better

7   way of putting it, but I would much rather have an IT forensic

8   expert to protect the integrity of this case.  My clients' case

9   is too important and I have to make sure that we take every

10  effort to be diligent and prudent and thorough, and my clients

11  deserve that, and we do want an IT forensic expert to go in

12  there to make certain that, one, Richter is not doing something

13  totally different than we are doing, and they don't have

14  different priorities, which I think they do.

15          So that is all for preserving the evidence in this

16  case and finding out why were thousands of documents destroyed

17  on company servers after a litigation hold.  And that's what we

18  want to ascertain, your Honor, and make sure it doesn't happen

19  again.

20          THE COURT:  Thank you.  Let's do the two issues one at

21  a time.

22          Let me turn now to defense counsel on the issue of

23  spoliation.

24          MR. HARWOOD:  This is Chris Harwood for Mr. Nygard.

25          Let me start and explain the issue a little bit.

K638DOEC

1    Plaintiffs are asking for extraordinary relief here, and at

2    this point they have not given this Court reason to believe

3    that any destruction of evidence occurred, much less that Mr.

4    Nygard, our client, was responsible for any such conduct.

5              THE COURT:  What about the Richter report?

6              MR. HARWOOD:  The Richter report does not assert that

7    improper evidence destruction occurred.  The receiver report,

8    what it does is it identifies file deletions that opposing

9    counsel noted apparently occurred after the litigation hold was

10   issued.  But the Richter report makes clear that the receiver

11   has not concluded that the deletions were improper.  In fact,

12   the report expressly states that the receiver, quote, continues

13   to review the deletion logs to determine the appropriateness of

14   the data document deletions.

15             So the Richter report does not reach any conclusion

16   that there was any improper conduct; it identifies that

17   deletions occurred and so it's looking into the issue.

18             THE COURT:  You are saying that plaintiffs have

19   provided no basis, but there is some basis because the Richter

20   report has determined that files were deleted after a

21   litigation hold.

22             MR. HARWOOD:  Yes, your Honor.  Although I guess the

23   question is, was there improper conduct here?  Did somebody sit

24   down and intend to delete information relevant to the

25   allegations in this case?  And while deletions may have

K638DOEC

occurred, there's no evidence that suggests that there was some

improper effort to destroy evidence here.  Plaintiffs are

focused on the one employee, Greg Fenske, which the report

identifies too and identifies his account as having a number of

deletions.  But again, the report, as with the general

deletions, doesn't make any finding that he improperly deleted

documents or was instructed to do so.  Again, the receiver

makes clear it's looking into the issues.

        We took this and plaintiffs' other allegation

seriously, and we spoke to Mr. Fenske, and based on our

discussions we don't have any reason to believe that he sought

to destroy relevant evidence, that he was instructed to destroy

relevant evidence, or even at this point that he did so

inadvertently.  He denied any of that.  As we noted in our

supplemental submission, to the extent that he deleted

documents, he reported that such deletions would have been

limited to his personal documents and to company documents that

he understood were not covered by the hold notice and were

unnecessary to retain for business reasons and were deleted to

preserve server space.  And the Richter report notes that IT

personnel, that there was a practice of deleting data in order

to preserve server space.  Servers are finite and if there was

no reason to keep the information, the information wasn't kept.

        But equally important, based on our discussions with

Mr. Fenske, he understood that to the extent that he deleted

K638DOEC

 1    documents, they were recoverable from two sources, from backup

 2    tapes, and he understood also the same software application

 3    that we understand is what the Richter Group used to compile

 4    their deletion log, that that application also allowed for

 5    information to be retrieved.  So certainly that was, as

 6    reported to us, his understanding.  And as your Honor pointed

 7    out, the receiver is in the process of both investigating the

 8    deletions and also trying to work with the IT staff to recover

 9    the documents.

10          As soon as we became aware and had access to the

11    deletion log that the receiver was referring to in the report,

12    we submitted it to your Honor.  And reviewing that log, which

13    on its face reflects an assortment of seemingly unrelated file

14    names, doesn't support a claim that Mr. Fenske intentionally

15    took action to delete documents relevant to this case.

16    Consistent with what we understand from talking to him, the log

17    reflects deletion of a couple of different categories of

18    information.  Web links, things like help desk links to

19    websites, there are many of those.  There are documents that,

20    based on file names, are personal in nature, like medical leave

21    information.  And then there are some documents that are

22    corporate documents that on their face from the file names

23    don't have any apparent connection to the callings in this

24    case.  Just the first two entries on the first page:  A standby

25    invoice in February 2010; the second entry, Nygard Enterprises

K638DOEC

LLC, main registration Florida.

Based on the receiver report, based on the information that we gathered in our investigation to date, and based on the very log that the receiver report references, there is just not a sufficient basis to conclude that improper conduct occurred with the intention of deleting documents.

THE COURT:  Mr. Harwood, if I were to make that determination, it would be based on my just taking your word for it.  Am I taking your word that you believe Mr. Fenske, or whatever his name is?  I am not prepared to do any of that today.

My question to you is, why should we be going down this road if the documents are in the possession of the Richter Group, are presumably safe, so to speak, or being preserved properly?  And unlike Mr. Gutzler, I am very familiar with these types of firms.  If they don't themselves have the forensic capacity, then they hire a very good computer forensic firm.  There are literally dozens of such firms that could have been doing good work over the last 20 years at least.  So I am not so concerned about the integrity of the underlying material.

So can you tell me where that material is, where the Richter Group is with respect to its analysis, and what if anything can we expect from that group with respect to its investigation of those purportedly destroyed documents?

K638DOEC

1          MR. HARWOOD:  Your Honor, our understanding is similar

2     to yours, though we representing Mr. Nygard don't have access

3     to the servers and documents anymore.  Those were all taken

4     into possession by the Richter Group.  So our understanding is

5     as yours, it is consistent with yours, that the Richter Group

6     has possession of the relevant servers, the relevant documents,

7     and has the means and the ability to do what in its report it

8     says it is doing, which is investigating the issue and working

9     to retrieve any files that may have been deleted.

10          So I am not in a position to describe to you exactly

11     what the Richter Group has done beyond what is stated in its

12     report, but I have no reason to doubt that the report is

13     accurate when it says that the Richter Group has the materials

14     and that it's working to determine whether anything improper

15     occurred and to retrieve any files that may have been deleted.

16          THE COURT:  Could you tell me at least where those

17     materials are and whether they are under the jurisdiction of a

18     Canadian court?

19          MR. HARWOOD:  My understanding is those materials are

20     all in Canada, but they were materials that were within the

21     possession, custody and control of the entities that were

22     placed into receivership.  Those entities were in Canada.  Some

23     of the entities were in the U.S., some were in Canada.  My

24     understanding is that the relevant servers that we are talking

25     about here were in Canada and that the Richter Group has

K638DOEC

1    possession of them in Canada.  And as your Honor noted, there

2    is a Canadian court that is overseeing the receivership that

3    that report was directed to.

4            THE COURT:  Please forgive my ignorance.  Why is that

5    pending in Canada?

6            MR. HARWOOD:  The Nygard entities were headquartered

7    in Canada, so the receivership occurred in Canada.

8            THE COURT:  And the principal place of business is

9    here in New York?

10           MR. HARWOOD:  There is a dispute about that issue,

11   your Honor.  That is going to be an issue for the motion to

12   dismiss briefing with respect to personal jurisdiction

13   arguments.

14           THE COURT:  OK.

15           MR. HARWOOD:  We have a difference of view.

16   Plaintiffs believe that the principal place of business is in

17   New York, and we have a very different view on that topic.

18           THE COURT:  Go ahead, unless you're done.

19           MR. HARWOOD:  Your Honor, I was finished with the

20   Richter piece, but there were significant allegations made and

21   so I just wanted to give your Honor a little bit of background

22   on the other pieces.

23           The allegations here -- also, I noted you said you are

24   not prepared to rule based on what we say we heard from

25   witnesses, but we certainly have taken the allegations

K638DOEC

1    seriously and followed up appropriately with respect to them.

2           Separate and apart from the receiver's report, the

3    plaintiffs have made a number of assertions relating to alleged

4    document destruction, and as we noted in our letter submission,

5    those allegations have been a moving target.  They were

6    initially made and then walked away from allegations that Mr.

7    Nygard himself ordered the destruction of servers and that

8    employees were instructed to destroy evidence by destroying

9    hard drives and destroying computer servers.

10          They made those allegations initially.  You saw that

11   in the February letters they submitted to you and to us.  But

12   then they replaced those initial allegations with a very

13   different assertion which does not support their claim of

14   document destruction.  They now assert that two specific

15   individuals on behalf of Mr. Nygard instructed IT personnel to

16   clean up a corporate website and Google references.  But that

17   assertion, the alleged removal of photos and videos from a

18   public-facing website, doesn't equate to the destruction of

19   those photos or videos.  And like with plaintiffs' allegations

20   relating to Mr. Fenske and the Richter report, we took that

21   allegation seriously.  We spoke to the two individuals that

22   were identified, and certainly to us they denied destroying

23   documents, instructing others to destroy documents or being

24   instructed to destroy documents.

25          Of course, the allegation is not that documents were

K638DOEC

1  destroyed; it is that information was removed from a

2  public-facing website.  And of course information can be

3  removed from a public-facing website without being destroyed.

4  Besides that, the only other support for their allegation of

5  document destruction is the receiver report, and as I already

6  mentioned, the receiver report doesn't actually make any

7  conclusions regarding document destruction.

8          So given the lack of support for their allegations in

9  document destruction, as your Honor notes, the receiver's

10  ongoing review of the purported deletions and the receiver's

11  ongoing effort to recover the deleted documents, and the lack

12  of any apparent link between our client and any preservation

13  issues, we respectfully submit there is no reason at this point

14  to pursue the extraordinary remedy of discovery that's being

15  sought, even before we have had a chance to respond to the

16  complaint.  We don't see any evidence of spoliation.

17  Plaintiffs certainly haven't given the Court a reason to

18  believe that there was intentional destruction of information,

19  but the receiver has possession and plaintiffs can explore that

20  issue during discovery if this case gets to that point.  There

21  is nothing time-sensitive about the issue.

22          THE COURT:  Is there any party in the receivership

23  that is a defendant here that you represent?

24          MR. HARWOOD:  We do not represent any of the receiver

25  defendants, no.  We represent Mr. Nygard and one Bahamian

1    entity that is not in the receivership.

2              THE COURT:  I ask because I am wondering if there is a

3    way of getting some additional information, at least with

4    respect to a procedural posture, as to where the Richter Group

5    is and what it intends to do and what the timeline is.

6              MR. HARWOOD:  We certainly have been at various points

7    in touch with counsel for the receiver.  I can inquire as to

8    that, your Honor.

9              THE COURT:  That would be helpful to me.

10             MR. GUTZLER:  Your Honor, may I briefly respond?

11             THE COURT:  Absolutely, Mr. Gutzler.

12             MR. GUTZLER:  I know it's improper asking opposing

13   counsel questions, but I am a little confused as to who they

14   represent.  Mr. Harwood, your Honor, I thought that they

15   represented all of the defendants, and I thought that all of

16   the defendants are in receivership, except for Mr. Nygard

17   individually.  I was a little confused by that answer and I

18   think your Honor was asking for a reason.  Did I misunderstand

19   something?

20             MR. HARWOOD:  The answer I gave was accurate.

21   Initially we represented all of the defendants and then a

22   number of the defendants were placed in receivership.  The case

23   has been stayed as to those entities and a receiver is in

24   control of those entities.

25             THE COURT:  OK.  If you could inquire, that would be

K638DOEC

1    useful.

2                Anything else that you wanted to respond on that

3    point, Mr. Gutzler?

4                MR. GUTZLER:  Thank you for the clarification, Mr.

5    Harwood.

6                Very briefly, I wanted to talk about Greg Fenske and

7    the alleged denial.  Your Honor, as I told you at the outset, I

8    said it for a reason, we have had many, many people come to us.

9    And some of the people who have come to us have a direct

10   pipeline into what is going on.  And notably, there was no

11   affidavit from Mr. Fenske; he didn't put together an affidavit.

12   And I submit to you he won't put together an affidavit.  But I

13   would like to take his deposition because we have information

14   from multiple sources that his denial -- he denied it in the

15   Richter report -- is a joke.  I have no idea how he could

16   possibly deny it.  So our information is better than opposing

17   counsel's.  We have people that very much care about this case

18   having the truth be revealed.  So I would like to see an

19   affidavit from Mr. Fenske where he submits to the jurisdiction

20   of this Court, and I anticipate we will never receive one of

21   those.

22                I also wanted to respond to the note that Mr. Harwood

23   said that the documents that were deleted were ones that

24   couldn't possibly be relevant.  And I think I did note quite a

25   few entries, and I can't imagine how photos of Falcon Lake are

K638DOEC

1    not relevant.

2          Your Honor, I want to anonymously introduce somebody.

3    I have a couple of my clients listening silently anonymously.

4    Your Honor, one of them has been to Falcon Lake in 2018, and

5    she is a survivor and she is listening right now.  I am not

6    going to say anything else, but she is one of the people who is

7    going to be an additional Jane Doe.  So Falcon Lake photos from

8    2018 would be terribly important, as well as the $28 million in

9    U.S. cash that was pulled down.

10          The last thing, your Honor, is where is the evidence?

11   At the outset, what we want is the evidence.  We don't want to

12   have an adverse inference; we want the documents, because we

13   know what they are going to show.  So we would rather show a

14   jury the actual evidence, the photos from Falcon Lake, for

15   example, rather than saying, you should presume it's an adverse

16   document for the other side.

17          THE COURT:  Let me ask about these pictures.  These

18   pictures are of a party at Falcon Lake, you say.

19          MR. GUTZLER:  All I know is the subject line is:

20   Photo, June 18 through June 28, 2018, Falcon Lake PDF.  That's

21   all I know.

22          THE COURT:  Is the allegation that at these parties

23   there was a lot of inappropriate sexual misconduct and sexual

24   assaults taking place?

25          MR. GUTZLER:  Yes.  That is one of the core

K638DOEC

1    allegations that we have heard from dozens of witnesses,

2    including the Jane Doe on this phone call.  We have all kinds

3    of evidence, your Honor.  We have pamper parties -- it's a

4    ridiculous name, but that's what they are called -- and that is

5    where drinking and drugging would go on and sexual assaults.

6    And that is all throughout our complaint, your Honor.

7            THE COURT:  Is it the allegation that there were

8    pictures of these parties on the public-facing part of the

9    company's website?

10           MR. GUTZLER:  That is true also.  We also understood

11   other photos were stored privately on computer servers.  Again,

12   I don't know what I don't know, but if you were to look at the

13   Nygard corporate website in our complaint, we have cited to

14   dozens of links where it was Peter Nygard with young women in

15   bathing suits and drinking at a pamper party.  It is on the

16   corporate website.  Most of them have now been removed; some of

17   them have been removed, not all, but they also had stuff that

18   was stored privately.  Obviously, your Honor, I don't know what

19   that 2018 photo was, but that's a really curious one, as well

20   as the 28 million being taken out.  So I don't know what I

21   don't know, but we should have access to the evidence.

22           MR. HARWOOD:  Your Honor, can I respond?

23           THE COURT:  Sure.

24           MR. HARWOOD:  So as Mr. Gutzler said, he doesn't know

25   what he doesn't know.  He is looking to put the cart before the

K638DOEC

  1     horse here.  He says he receives information about what Fenske

  2     did that is better than our information and somehow that

  3     entitles him to take discovery when we are still at a point

  4     where plaintiffs haven't even responded to the complaint.

  5             As your Honor noted, this information, what happened

  6     in terms of these deletions, at this point we don't have any

  7     reason to believe that there was intentional misconduct, but it

  8     is something that is, as we understand it, being sorted out by

  9     the receiver and there is no reason why that process can't

 10     continue.  I volunteered and will inquire as to a timeline of

 11     what the receiver is doing.  But at this point plaintiffs are

 12     suggesting there should be extraordinary relief, pre-motion to

 13     dismiss, pre-answer discovery, because they are speculating

 14     that something improper occurred, but don't actually know

 15     whether anything improper occurred.  For the same reasons that

 16     they didn't want us to have the names of their clients until

 17     discovery actually starts, this issue can also wait until

 18     discovery actually starts.

 19             THE COURT:  Mr. Gutzler, you had another point?

 20             MR. GUTZLER:  Yes, very briefly.  To that point, it is

 21     strange to be saying that we put the cart before the horse.  We

 22     were correct in every single thing we brought to opposing

 23     counsel's attention.  It wasn't a moving target.  It was three

 24     buckets of information, and we were right on all three.  They

 25     did clean up corporate websites and other files; they did try

K638DOEC

1    to change the Google indexing; and they did destroy thousands

2    of documents.

3            In my 23 years of practice, Judge, I have never seen

4    documents being destroyed like this, by a person who is named

5    as a key co-conspirator, after a litigation hold, after an FBI

6    raid, and the day Richter was going to take over the computers.

7    I have never seen it, and I have never seen a more clear

8    example of a situation that merits looking into.  And, no, I

9    don't take Mr. Fenske's word for it because I have information

10   that is different, but I know he deleted thousands of

11   documents.  That's the difference here.  I am not speculating

12   whether he destroyed documents.  He did.  And I have never seen

13   a case quite like this, your Honor.  So I would respectfully

14   submit that measured, tailored discovery to ascertain the truth

15   is prudent and it's warranted and it's fair.

16           THE COURT:  Thank you.

17           Here is where I come down on the issue of spoliation.

18   Unless and until someone tells me different, so far as I know,

19   all of the evidence that would prove or not that relevant

20   documents were deleted is safely in the possession of the

21   Richter Group, under the jurisdiction of the Canadian court.

22   Just like I will not take Mr. Harwood and Mr. Fenske at their

23   word at this point because I have nothing to base it on, nor

24   will I take you, Mr. Gutzler, or your witnesses, at your word

25   that these documents not only were deleted but were deleted

K638DOEC

1    with an ill purpose.

2            Now, the facts, and I have acknowledged that the facts

3    are before me, are suggestive perhaps of wrongdoing, the facts

4    that there were deletions that were made after the litigation

5    hold on the same day or the day prior to the time that the

6    Richter Group was going to take control of the servers and the

7    backup tapes.  But now the Richter Group has control of the

8    servers and the backup tapes and, accordingly, I don't see why

9    there is any need to proceed any further at this point.  You

10   will have your evidence at the appropriate time, presumably

11   since, again, no one is able to tell me whether I even have the

12   authority to direct the Richter Group to give you those

13   materials.

14           So that aspect of your request is denied.  Let's talk

15   about the amended complaint.

16           Let me begin by asking you, Mr. Gutzler, again, we

17   were here a couple of weeks ago and it is my practice to ask

18   the parties, now that you have been apprised of the other

19   side's challenges, do you see a way of amending the complaint

20   in order to meet those challenges so as to avoid lengthy and

21   expensive motion practice?  In their papers, Morvillo

22   Abramowitz suggests that you had that opportunity, that you

23   knew about this before, and that you determined that the

24   complaint is good enough as it is.  So what has changed?  What

25   is new?

K638DOEC

1          MR. GUTZLER:  Yes.  Thank you, your Honor.  Thank you

2     for hearing us on the evidence issue.  The answer is very

3     simple, and one of those people is on the phone listening

4     silently.  That is that we have had ten new plaintiffs come to

5     us who would like their voices to be heard and for justice for

6     them.  They have come forward after months of agonizing on what

7     to do.  And I am not going to have her speak, but I spoke to

8     her, and I know what these people are going through.

9          So we have additional plaintiffs, your Honor.  And

10    that's particularly important here, because as we talked during

11    the last hearing, counsel made a very big point about the class

12    certification issue, the class won't be certified.  In that

13    event, your Honor, I want to make sure that the survivors who

14    have come forward do have a platform, an opportunity, and we

15    want to add them to the amended complaint.  It will not slow

16    down at all the briefing.  The same arguments they can make.

17         So the reason for the amendment, your Honor, since the

18    last time we spoke is, one, new plaintiffs have come forward,

19    and I want to honor their wishes to be represented.  And two,

20    counsel talked about certain factual gaps that prevented them

21    from even filing certain motions to dismiss.  For example, I

22    believe it was the date of the assault of Jane Doe No. 10, when

23    Mr. Harwood said, how can I possibly tell know it's within the

24    statute of limitations?  So we are going to add the date.  So

25    it's factual gaps.  Defense counsel said they may be filing a

K638DOEC

| | |
|---|---|
| 1 | motion for a more definite statement to address those issues. |
| 2 | So, your Honor, we are happy to fill in a couple of alleged |
| 3 | factual gaps that counsel raised during our last phone call. |
| 4 | It won't change their legal bases.  It won't slow anything |
| 5 | down.  It will just have additional facts that they wanted for |
| 6 | the motion to dismiss, and, your Honor, for us to add |
| 7 | approximately ten more plaintiffs who have come forward to us. |
| 8 | And that's as simple as it is, your Honor.  We can do that |
| 9 | amendment very, very quickly.  It will not be much.  It is just |
| 10 | adding plaintiffs and a few small factual gaps that defendants |
| 11 | wanted addressed for the motion to dismiss. |
| 12 | THE COURT:  Mr. Harwood, when is the opening brief due |
| 13 | on the motion to dismiss? |
| 14 | MR. HARWOOD:  With this current premotion, things have |
| 15 | gotten a little sidetracked, but it was supposed to be due on |
| 16 | Monday. |
| 17 | THE COURT:  OK.  And your argument on the proposed |
| 18 | amended complaint? |
| 19 | MR. HARWOOD:  Yes, your Honor.  Thank you. |
| 20 | The plaintiffs really haven't given the Court a valid |
| 21 | justification for the amendments.  With respect to our needs, |
| 22 | we don't need plaintiffs to clarify or correct factual gaps for |
| 23 | our motion to dismiss.  We are prepared to move forward with |
| 24 | the complaint as is.  Most importantly, the plaintiffs' |
| 25 | proposed amendments aren't aimed at any of the defects that are |

K638DOEC

 1    going to be the subject of our motion to dismiss.  They

 2    certainly, in their papers or today, they have not identified

 3    any defect that the proposed amendments would cure.  To the

 4    contrary, they acknowledged in their premotion letter that

 5    their new pleading won't address the legal grounds upon which

 6    our anticipated motion will be based.

 7            Of course, the current complaint is an amended

 8    complaint.  There was an initial complaint back in February and

 9    we identified the same legal defects in our premotion letter

10    response to the initial complaint.  They sought 45 days to

11    amend, but they didn't address the defects then, including

12    anything relating to the class definition, and so there is no

13    reason to believe that they are going to address the defects

14    now.  In fact, the type of alleged conduct on which their

15    claims are based is not susceptible to class treatment because

16    to determine whether any of the putative class members is a

17    member of the class would require separate adjudication as to

18    whether that specific class member was a victim of a unique

19    instance of sexual misconduct.  The cases we cited in our

20    papers show that that's a material defect.

21            Separately, Mr. Gutzler mentioned adding new

22    plaintiffs, but there is no justification at this point for

23    adding new plaintiffs either.  The plaintiffs are pursuing this

24    as a class action.  We don't believe it is appropriate as a

25    class action, but they believe it is, and they have already got

K638DOEC

1    46 plaintiffs asserting claims on behalf of their putative

2    classes, and they haven't suggested that any of these new

3    plaintiffs are going to add anything with respect to their

4    particular characteristics that will make them any more likely

5    to survive on any grounds for dismissal, i.e., that none of the

6    alleged conduct occurred in New York, that it's outside of the

7    statute of limitations period.  So for those reasons, we don't

8    believe that they have provided valid grounds for amending the

9    complaint.

10             MR. GUTZLER:  Your Honor, may I respond?

11             THE COURT:  You have got a minute or two.

12             MR. GUTZLER:  The actual plaintiff who is on the phone

13   right now listening silently, who wants to be a new Jane Doe,

14   was in the last three years and she was raped in New York.  So

15   that addresses that issue.  And she wants to be heard.  She

16   deserves that.

17             Second of all, on the class certification issue, we

18   did tell counsel we would seek to revise the class definition.

19   And so in the alternative, your Honor, to the extent that the

20   Court does agree with the defense, with respect to our revised

21   class definition in the second amended complaint, we would seek

22   to have our additional Jane Does added to the complaint,

23   including the survivor who is on the phone right now.  So we

24   feel it's very important.  I don't see the prejudice to

25   defendants.  They can make their same arguments, but we do have

K638DOEC

|  |  |
|---|---|
| 1 | our plaintiffs who have their shot at justice, and that's what |
| 2 | we want. |
| 3 | THE COURT:  Thank you. |
| 4 | On the amended complaint issue, again, the motion to |
| 5 | dismiss has not yet been filed, and defendants have indicated |
| 6 | on any number of occasions, first of all, that they would |
| 7 | initially move for a more definite statement and there are |
| 8 | still parts of the complaint that they felt were deficient with |
| 9 | respect to the level of specificity that was provided or the |
| 10 | amount of facts that were provided. |
| 11 | Certainly, it is the case that plaintiffs are coming |
| 12 | here at least two weeks too late, or three weeks too late, in |
| 13 | terms of offering to fill in those gaps now, but I don't see |
| 14 | how defendants are prejudiced, because once we get into the |
| 15 | cross-motions to dismiss, to amend things get very, very |
| 16 | sloppy.  So to keep things as efficient as possible and moving |
| 17 | as neatly as possible, I will grant plaintiffs leave to file an |
| 18 | amended complaint.  They should do so by next Wednesday, which |
| 19 | is the 10th of June.  Defendants will thereafter have three |
| 20 | weeks to file their motion to dismiss, three weeks to respond, |
| 21 | and one week to reply. |
| 22 | So the motion will be due on the 1st of July; the 22nd |
| 23 | of July will be the response; and the 29th of July will be the |
| 24 | reply. |
| 25 | MR. GUTZLER:  Thank you, your Honor. |

K638DOEC

1          THE COURT:  Does everyone have those dates?

2          MR. HARWOOD:  Yes, your Honor.

3          Can I raise just one issue?

4          THE COURT:  Absolutely.

5          MR. HARWOOD:  Just to clarify, given that Mr. Gutzler

6    provided justification for the new plaintiffs and somebody

7    alleging conduct within the limitations period in New York, I

8    would respectfully submit, to the extent they are adding new

9    plaintiffs, that should be limited to conduct that occurred

10   within the last ten years and in New York.

11         THE COURT:  Well, presumably, whatever they are going

12   to add, it will be arguably within the statute.

13         MR. GUTZLER:  The relevant statute, that's correct.

14   We can bring in any plaintiffs we want.  We do have different

15   plaintiffs from different time periods.

16         THE COURT:  File your amended complaint.

17         Anything else?

18         MR. GUTZLER:  No.  Thank you very much.  We appreciate

19   you listening to us today.

20         THE COURT:  Anything else, Mr. Harwood?

21         MR. HARWOOD:  Just procedural.  We didn't address at

22   the last meeting the page limits for the brief.  This motion to

23   amend preempted that.  But given that we are now back on

24   schedule, having evaluated the claims and the arguments, as

25   well as the complaint now has 46 plaintiffs and it's probably

K638DOEC

1   going to increase, it's now 250 pages, and there are multiple

2   different grounds for dismissal, each requiring separate

3   explanations, I would respectfully request that we be entitled

4   to 50 pages for our motion to dismiss.

5           THE COURT:  That application is granted.

6           MR. HARWOOD:  Thank you, your Honor.

7           THE COURT:  Unless there is anything else, we are

8   adjourned.  Everyone please stay safe.

9           MR. GUTZLER:  Thank you, your Honor.

10          MR. HARWOOD:  Thank you, your Honor.

11          (Adjourned)